John P. Donohoe, J.
This petition" for a judgment, pursuant to CPLR 7503 (subd. [b]), staying" arbitration between petitioner and respondent upon the ground that a valid agreement to arbitrate was not made by the parties is granted.
In this proceeding, a school district moves to stay the arbitration of a grievance of a teachers’ association having to do with the maximum number of pupils in certain classes. The July 1, 1970 agreement between the two parties provides that such questions may be submitted to arbitration. That agreement expired by its terms on June 30, 1972. The parties have not concluded a new agreement. The issue which is presented here is whether the agreement between the parties, which has expired, continues in effect until a new one has been concluded.
The Board of Education and the school teachers’ association entered into an agreement of the kind which was sanctioned by *932 article 14 of the Civil Service Law, to run from July 1, 1970 until June 30, 1972. The agreement provided, among other things that teachers’ grievances would be considered in a four-stage procedure, the final stage of which was to be compulsory arbitration.
When the agreement had run its stated course, the parties were unable to agree upon the terms of a new agreement. They continued to negotiate for many months after June 30, 1972, without success. In December, 1972, the teachers’ association grieved over the claimed excessive size of 10 classes of sixth grade students. The grievance was carried through the various stages which were provided in the contract through Stage 3, which is the appeal to the Board of Education. That body said, in a decision dated February 8, 1973, that, “ Since, by its own terms the collective bargaining agreement upon which grievants rely, both for .the procedure for redress which they pursue (Art. XXIV) and the substantive provision which they assert has been disregarded, expired on June 30, 1972 (Art. XXX, Section 1), and these claims arose more than six months after that expiration date, there is no foundation, either adjectively, or substantively, for the procedure followed by the grievance for the relief which is sought. Accordingly, the claims are dismissed. ”
A few days later, on February 20, 1973, the teachers’ association submitted its demand for the arbitration which petitioner now seeks to stay.
The Legislature has not specifically stated whether an agreement which has been entered into between a public employer and an employee organization shall remain in effect after its terminal date until a new agreement has been concluded. The inferences necessarily drawn from the various provisions of article 14 of the Civil Service Law make it clear that it did not intend such extended duration.
The Legislature first declared in section 200 that the public policy of the State is “to promote harmonious and cooperative relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government.” It goes on to say that these policies are best effectuated by “ (b) requiring the state, local governments and .other political subdivisions to negotiate with, and enter into written agreements with employee organizations representing public employees which have been certified or recognized ” and “ (d) creating a public employment relations board to assist in resolving disputes between public employees and public employers ”.
*933 Section 209 of the Civil Service Law is entitled 11 Resolution of disputes in the course of collective negotiations A key provision of this section appears in subdivision 2, which says 4 * Public employers are hereby empowered to enter into written agreements with recognized or certified employee organizations setting forth procedures to be invoked in the event of disputes which reach an impasse in the course of collective negotiations. Such agreements may include the undertaking by each party to submit unresolved issues to impartial arbitration. In the absence or upon the failure of such procedures, public employers and employee organizations may request the board to render assistance as provided in this section, or the board may render such assistance on its own motion, as provided in subdivision three of this section.” The section continues to set forth in detail the procedures which are to he invoked in the event the collective bargaining procedures fail to produce an agreement between the parties.
The agreement between the parties to this litigation does not contain any such impasse provisions. Nevertheless, it is the availability of such a remedy under the statutes, not the parties’ utilization of it, which indicates legislative intent.
The Legislature would not have provided a thorough and detailed procedure for the resolution of deadlocks in negotiation if it had intended to permit the judicial imposition of an expired agreement upon the parties. To impose such an agreement upon the parties, at least one of whom must obviously be unwilling to accept it, would frustrate the legislative plan and foreclose bargaining in good faith. It would, in effect, vitiate the requirements of section 209-a (subd. 1, par. [d]; subd. 2, par. [b]) which define the failure of employers and employee organizations to negotiate in good faith as improper practices.
It is consistent with this legislative plan that subdivision 12 of section 201 of the act defines the term “ agreement ” as the ‘ ‘ result of the exchange of mutual promises between the chief executive officer of a public employer and an employee organization which becomes a binding contract, for the period set forth therein (Emphasis added.) The emphasized words would be superfluous if they had not been employed in a considered way in order to limit public collective bargaining agreements to the periods of their stated terms. This definition is meant to be read together with section 209 which assigns to the Public Employment Relations Board the task of extracting the parties from bargaining impasses by employing prescribed procedures. These procedures prescribe all of the steps to be taken to resolve *934 disputes in negotiation, including final submission to the appropriate legislative body if all else fails.
Lest there by any misunderstanding that the Legislature meant its plan for the resolution of disputes in negotiations to be complete and exclusive, it concluded in subdivision 3 of section 209-a by declaring that 11 In applying this section, fundamental distinctions between private and public employment shall be recognized, and no body of federal or state law applicable wholly or in part to private employment, shall be regarded as binding or controlling precedent.” It would be difficult to conceive of a clearer direction that this legislative plan was not to be applied by analogy, but solely in accordance with the structures which it created.
Article 14 of the Civil Service Law was well conceived as a device to put public employment disputes to rest. To declare that an agreement continues beyond its stated expiration date would run counter to the plan and upset the balance between public employers and employees which has been established by the statute.
It is concluded that there was no agreement in effect between the parties at the time when the grievance procedures were initiated.