In the Matter of the Arbitration between NIAGARA WHEAT-FIELD ADMINISTRATORS ASSOCIATION, Respondent, and NI-AGARA WHEATFIELD CENTRAL SCHOOL DISTRICT, Appellant.

Fourth Department, December 10, 1976

*Richard C. Doherty* for appellant.

*Falk, Siemer, Glick, Tuppen & Maloney (Charles D. Tuppen, Jr.,* of counsel), for respondent.

WITMER, J. Niagara Wheatfield Central School District (herein referred to as the "School Board") appeals from the judgment of Special Term confirming an arbitrator's award and denying the board's application to vacate the award in favor of Niagara Wheatfield Administrators Association, petitioner-respondent.

The arbitration was conducted under a contract between petitioner and the School Board, entered into on July 1, 1973 for a two-year period, through June 30, 1975, which contained a grievance procedure, the third and final step of which was arbitration. The contract limited the arbitrator in his decision, "strictly to the application and interpretation" of its provisions, "without power or authority to make any decision * * * contrary to, or inconsistent with * * * the terms of this agreement or of applicable law or rules", or "limiting or interfering in any way with the powers, duties and responsibilities of the Board". It was provided in article XXV that, "This contract shall become effective on date of signing and will continue in effect until 30 June 1975, except as amended in writing through mutual consent"; but in paragraph D of article II it was provided that, "The current negotiated agreement and established fringe benefits between the Board of Education and the NWAA [petitioner] shall remain in effect until modified or changed by mutual agreement in subsequent negotiations."

In the spring of 1975 the parties met on a few occasions to consider terms of a renewal contract to begin on July 1, 1975. In the course thereof and on May 7, 1975 the board's representative stated that the board would not consider continuing the provision of the current contract insofar as it tied the salaries of the administrators to those of the teachers. The statement had no effect on petitioner's members prior to June

30, 1975, the terminal date of that current contract. Neverthe-less, because of that statement petitioner asserted that there was a grievance for violation of the contract, and it initiated the grievance procedures. The matter reached the third level and, with the consent of the School Board, an arbitrator was selected and he conducted a hearing of the case on September 12, 1975. Two questions were submitted for arbitration,

(1) Did a grievance exist on May 7, 1975?; and

(2) Did the District [School Board] violate the [current] contract when it failed to pay administrators on July 1, 1975 according to article XIX?

The board contends that since the statement made on May 7, 1975 by its negotiator referred to contemplated action at a time after June 30, 1975, the expiration date of the current contract, it could not form the basis for a grievance under the contract, for no threatened action by the board could affect any of petitioner's members prior to July 1, 1975. Petitioner contends, however, that paragraph D of article II of the contract, quoted above, was designed to extend the contract beyond June 30, 1975 in respect of the ratio of the salaries of its members to the teachers' salaries.

The board surely had an arguable point, which if it desired, it could have used as a basis for a motion seeking to stay arbitration. We need not pause to consider the efficacy of that contention however, because the board consented to arbitra-tion. The board is, therefore, bound by the arbitrator's award, if otherwise proper, for when parties enter into arbitration either under a contract or a voluntary submission, they are bound by it *(Matter of Bullard v Grace Co.,* 240 NY 388, 397; 22 Carmody-Wait 2d, NY Prac, Arbitration, § 141:11), and they can be relieved from the award only as authorized under CPLR 7511 (subd [b]).

On this appeal the board has made a preliminary motion in which it requests us to receive as a part of the record Exhibit 8, which was received on the hearing before the arbitrator, showing the proceedings in the meetings between petitioner and the board's negotiator leading up to petitioner's demand for arbitration. The board asks us to consider this exhibit to show that petitioner had no valid reason to claim a grievance and ask for arbitration. Petitioner objects to our considering the exhibit, pointing out that there were several other exhib-its before the arbitrator, as well as testimony, none of which is

a part of this record. Petitioner argues that receipt of Exhibit 8 would be giving undue weight to one exhibit as against the other evidence before the arbitrator, and also that, in any event, the detailed evidence before the arbitrator is not subject to court review. We recognize the merit of petitioner's argument. In any event, were we to consider the exhibit, we would conclude that it is of no help to the board, because when it consented to arbitration, it waived the right to contend that there was no arbitrable dispute.

The remaining argument of the board is that the arbitrator exceeded his power (CPLR 7511, subd [b], par 1, cl [iii]) and hence that the award should be vacated. The board bottoms this argument on paragraph D of article II of the contract, asserting that the provision, if interpreted as petitioner contends, so as to extend the contract with reference to administrators' salaries until petitioner agrees to modify the contract, is *ultra vires* and void as against public policy.

Petitioner argues that since the board did not raise this point before the arbitrator nor at Special Term, it cannot argue it before us. We cannot accept this contention. In *O'Mara v Dentinger* (271 App Div 22, 33) we held in an opinion by LARKIN, J., that, "Where the illegality appears plainly and the transaction is contrary to public policy, the court may, of its own motion, take notice of it * * *, and may consider it for the first time on appeal".

In *Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Federation of Teachers* (40 NY2d 268, 271) Chief Judge BREITEL wrote, "A provision in a collective agreement guaranteeing public employees job security *for a reasonable period of time* is not prohibited by any statute or controlling decisional law and is not contrary to public policy"; and (p 273) he added, *"The public employer's power to bargain collectively, while broad, is not unlimited.* Although a public employer is free to negotiate any matter in controversy, whether or not it involves a term or condition of employment subject to mandatory bargaining, it may do so only in the absence of 'plain and clear' prohibitions in statute or controlling decision law, or restrictive public policy" (emphasis added). See, also, *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.* (40 NY2d 774) and *Matter of Union Free School Dist. No. 2 of Town of Cheektowaga v Nyquist* (38 NY2d 137, 143). In *Yonkers,* the court (p 275) citing a similar case, upheld, as not violative of public policy,

job security contracts for relatively brief durations, to wit, three years and two years respectively.

The contract in the case at bar had run two years, and the arbitrator held that paragraph D of article II had a continuing effect, "until a new contract is agreed to by the parties". Such construction puts the board at a serious disadvantage and requires it to negotiate upon petitioner's terms *or* continue indefinitely the compensation index contained in the 1973-1975 contract. As so construed, we conclude that such paragraph D is against public policy and hence void.

We recognize that the court's power to review arbitration awards is very limited. CPLR 7501 provides in part, "In determining any matter arising under this article, the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute." Since the board consented to arbitration, it is bound thereby unless, in this case, the determination exceeds the arbitrator's power because it is based upon an interpretation which is contrary to public policy. For this reason the board is bound by the arbitrator's determination of the question submitted, to wit, that an arbitrable dispute exists. For this reason, also, the board would be bound by the arbitrator's interpretation of paragraph D of article II of the contract, provided that interpretation did not violate public policy.

In vacating the award because it violates public policy, we remit the matter to the arbitrator to reconsider his award and render one which will not violate that policy.

As an abstract principle of law, we conceive that an award favorable to petitioner, albeit less so than the vacated award, could be made by the arbitrator by determining, for example, that paragraph D of article II of the agreement shall remain in effect for a reasonable time after June 30, 1975, in which the board and petitioner may negotiate a new contract. It is not for us, of course, to advise the arbitrator as to how to fashion his award, and we do not suggest that he may not reach an entirely contrary conclusion from his first award.

The award should, therefore, be vacated and the matter remitted to the arbitrator to reconsider his determination in accordance with this opinion.

MARSH, P. J., MOULE, MAHONEY and GOLDMAN, JJ., concur.

Judgment unanimously reversed, without costs, award va-

cated and matter remitted to arbitrator for further proceedings in accordance with opinion by WITMER, J.