Isaac Rubin, J.
By this CPLR article 75 proceeding, the petitioner school district (district) seeks to obtain three stays of arbitration pursuant to CPLR 7503 (subd b).
The respondent Dobbs Ferry United Teachers (DFUT) and its president, respondent Benezra, have cross-moved to dismiss the article 75 proceeding or, in the alternative, to compel arbitration of each of the three grievances filed on the ground that there is an agreement to arbitrate the grieved matters herein.
The facts are essentially undisputed.
The petitioner district is a public employer within the meaning of section 200 of the Civil Service Law ("Taylor Law”). The respondent DFUT is the duly recognized and certified collective bargaining agent for all teaching personnel under the Taylor Law.
Petitioner and respondent DFUT entered into a collective bargaining agreement in January, 1974, the duration of which is stated in article X, section 2 thereof, as follows: "Sec. 2. Duration of Agreement This Agreement shall be effective as of July 1, 1973, and shall remain in effect through June 30, 1976. *820 Thereafter it shall continue in effect unless amended or superseded. ” (Emphasis added.)
The American Arbitration Association was the contractually designated body for arbitration of disputes between the parties.
The petition alleges that on March 9, 1976, the district gave notice to DFUT that "it would consider the then existing agreement terminated as of June 30, 1976, and presented to the DFUT the draft of a new agreement between the district and the DFUT. The cross motion alleges that in March, 1976, the parties began negotiations regarding a successor agreement, which "negotiations continue to date”.
No new agreement was executed between the parties on or before June 30, 1976.
On or about June 22, 1976, the district, for alleged economy and organizational reasons, eliminated certain positions effective as of July 1, 1976. Then, on July 2, 1976, the district notified DFUT that it would not continue payments to the DFUT welfare fund at the amount stipulated in the collective bargaining agreement on the ground that it expired on June 30, 1976, and that "the subject of the Welfare Fund is one which is currently the subject of collective bargaining between the district and the DFUT”.
On or about September 7, 1976, prior to the commencement of school, DFUT was further notified by the district that the teachers’ lunch period would be shortened by 10 minutes, with a shorter school day for teachers and pupils starting with the beginning of school for the 1976-1977 school year.
On October 27, 1976, the respondent DFUT filed three separate grievances with the district under the collective bargaining agreement afore-mentioned. These grievances were:
(1) That the shortening of the teachers’ lunch period was a violation of paragraph 12 of section 8 of article VI thereof;
(2) that the failure to pay the amount stipulated in the agreement was a violation of section 2, section 3 and paragraph 22 of section 4 of article VIII thereof and
(3) That the dismissal of non-certified personnel constituted a reduction in staff below the levels of 1973, and a violation of paragraph 9 of section 7B of article V of the agreement.
On November 30, 1976, the district denied each of these grievances, by separate letters, on the ground that the collect *821 ive bargaining agreement on which they were based had expired on June 30, 1976, and alternatively, that such grievances had not been timely filed even if the agreement were extant.
Then, on December 21, 1976, DFUT demanded arbitration of the three filed grievances.
According to the papers submitted herein, no new collective bargaining agreement has been entered into as of this date.
The issue involved herein is whether a collective bargaining agreement between the parties, which has expired, continues in effect as to demands for arbitration thereunder made after its terminal date, where said agreement provides that "thereafter it shall continue in effect unless amended or superseded.”
The public employer’s power to bargain collectively, while broad, is not unlimited. Although a public employer is free to negotiate any matter in controversy, whether or not it involves a term or condition of employment subject to mandatory bargaining, it may do so only in the absence of "plain and clear” prohibitions in statute or controlling decisional law, or restrictive public policy. (Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774; Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Federation of Teachers, 40 NY2d 268, 273; Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.], 37 NY2d 614, 616-618; Syracuse Teachers Assn. v Board of Educ. Syracuse City School Dist., 35 NY2d 743, 744.)
At bar, there is no question that the board had the authority to voluntarily agree by its collective bargaining agreement to submit to arbitration the subject matter of the three grievances, and, was not prohibited from doing so by any statute or controlling decisional law or public policy.
There remains the issue, however, whether it was prohibited by any such statute or controlling decisional law or public policy from further agreeing that after the terminal date of the agreement, to wit, June 30, 1976, "it shall continue in effect unless amended or superseded.”
The problem whether a public employer is obliged by law or contract to maintain existing terms and conditions of employment during negotiations until the parties conclude a successor agreement has been considered of late both by the Public Employment Relations Board (PERB) and the courts.
*822 In Matter of Triborough Bridge & Tunnel Auth. (5 PERB 3037), the so-called Triborough doctrine was established which affirmatively answered that issue. It has been adopted and confirmed by some of the lower courts to a limited extent, some of the cases recognizing continuation of certain provisions of the agreement, but not all. (See Matter of Incorporated Vil. of Lynbrook v Lynbrook Police Benevolent Assn., 87 Misc 2d 57, 59, and cases cited therein.)
In Matter of Board of Educ. [Poughkeepsie Public School Teachers Assn.] (75 Misc 2d 931) the court held that collective bargaining agreements are limited to the periods of their stated terms, and there being no agreement in effect at the time of the grievance, arbitration was stayed. The Appellate Division, Second Department (44 AD2d 598, 599), in affirming the order of Special Term, held: "The contract having expired, the provision for arbitration was no longer in effect.” While the Appellate Division made no mention of the so-called "Triborough doctrine,” the appeal record in Poughkeepsie, in point II of the respondent-appellant’s brief, argues this doctrine extensively as a basis for reversal of the order on the ground that the purpose of the Taylor Law (Civil Service Law, art 14) "would be best effectuated by maintenance of the status quo during the hiatus period between an expired agreement and the negotiation of a successor agreement.” The court, as indicated, rejected this contention and, in doing so, implicitly rejected the "Triborough doctrine.”
In Matter of Cardinale v Andersen (75 Misc 2d 210) a Nassau County case, decided before the Appellate Division, Second Department, decision in Poughkeepsie, the court rejected the argument that the status quo must be maintained pending collective negotiations for a new contract because of the Taylor Law prohibition on strikes. (See, also, Labor Relations Law, 26 Syracuse L Rev 125, 139.) In advocating such contention, the Triborough doctrine was argued in support thereof. However, as the court stated (p 217): "It is fair to note that this administrative decision has not been adopted or confirmed by any appellate court”. (Matter of Cardinale v Andersen, supra.) The court also commented (p 218): "The employees then would always start where they previously left off. They would be locked in a guaranteed gain position, and the employers into an assured losing stance.” (Matter of Cardinale v Andersen, supra.)
In Matter of Betts (Hoosic Val. Cent. School Dist.) (86 Misc *823 2d 964) a stay of arbitration was granted, where the agreement had expired, and it contained no provision for automatic extension of its terms, and the Board of Education, did not, by its actions, impliedly agree to extend the arbitration provisions of the contract beyond their stated expiration date. The court relied upon the Poughkeepsie case, and rejected the Triborough doctrine "in view of the lack of acceptance of the Triborough doctrine by the courts and the confusion as to its scope within the board decisions themselves”. (Matter of Betts, supra, p 967.) As to the latter, an article on Labor Relations Law (26 Syracuse L Rev 138) has commented: "Not only has the Triborough doctrine not been definitively tested in the courts, but even at the PERB level, its scope is not clear.” And, prophetically, it stated: "We can therefore expect a spate of litigation in those districts which have failed to resolve their contract negotiations”.
In Matter of Betts (supra) another interesting argument supportive of the Union’s contention for maintenance of the status quo, pending execution of a successor contract, was raised by it. Under a new amendment to section 209 (subd 3, par [f]) of the Civil Service Law, a school board upon reaching an impasse in negotiations may no longer conduct a public hearing and thereafter impose its decision upon the union. By virtue of the amendment, when such an impasse is reached, the board (PERB) may afford the parties an opportunity to explain their respective positions with respect to the report of the fact finding board at a meeting at which the legislative body (board of education) or its committee may be present; thereafter, the board of education may take "such action as is necessary and appropriate to reach an agreement,” with the assistance of PERB, as may be appropriate. In this manner, by eliminating the final hearing with the school board acting as a legislative body, a new collective bargaining agreement will only be entered into if both parties accept its terms. (Matter of Betts, supra, p 967.)
In commenting on this amendment, it has been stated that: "While it may be argued that since the Legislature enacted the new procedures against the background of the Triborough doctrine it thereby legislatively adopted that view, such a conclusion is far from compelling.” (26 Syracuse L Rev 138.) And, as the court in Matter of Betts (supra, p 967) so aptly stated: "Such a far reaching pronouncement requires specific language from the Legislature and should not be the result of *824 judicial interpretation * * * If the Legislature had been seeking this result, presumably direct language would have been employed.”
Again, in Matter of Incorporated Vil. of Lynbrook v Lynbrook Police Benevolent Assn. (87 Misc 2d 57) petitioner sought to vacate an arbitration award on the ground that no valid agreement to arbitrate was in existence at the time of the alleged grievance, inasmuch as the contract had expired on its termination date.
The petitioner had taken no part in the arbitration. The court in vacating the award to the union, rejected the Triborough doctrine, and set aside the arbitration award based on the authority of Matter of Board of Educ. (Poughkeepsie Public Schools Assn.) (75 Misc 2d 931, affd 44 AD2d 598, supra) which held that the contract having expired, the provision for arbitration was no longer in effect. The court further held that petitioner, although it failed to stay arbitration could, nevertheless, vacate the award since it had not participated therein.
In Matter of Board of Educ. Malone Cent. School Dist. (Malone Central Teachers Assn.) (53 AD2d 417) after the collective bargaining agreement expired, the board eliminated certain staff positions. The union filed a grievance and demanded arbitration. Special Term granted a stay of arbitration because the collective bargaining agreement had expired. The court relied upon Matter of Board of Educ. (Poughkeepsie Public School Teachers’ Assn.) (supra) and held that the arbitration clause had expired with the contract. In reversing, the Appellate Division, Third Department, stated that: "Had there been presented in this case nothing more than a question of enforcibility of an arbitration provision contained in an expired contract, we would concur in the determination of Special Term on the authority of Matter of Board of Educ. (Poughkeepsie Public School Teachers’ Assn.).” (Matter of Board of Educ. Malone Cent. School Dist., supra, pp 418-419.)
In short, the Third Department and the Second Department concurred in this position.
However, as the court in Malone further found, after the decision at Special Term was rendered, a PERB unfair practice charge was heard based upon the board’s refusal to arbitrate the matter in dispute. On that hearing, the court pointed out, the evidence showed that a stipulation had been entered into between the parties to the effect that both parties *825 had "'agreed that all items in the then current contract, which was due to expire on June 30, 1974, would remain the same, unless either party requested that a particular item be modified or amended’ ” (supra, p 419); (emphasis added). Based upon this stipulation, the court saw "no reason” why those provisions of the written prior contract, to which the parties agreed to be bound, should not be extended. Then, the court stated: "Indeed, given the fact that the relationship of the parties is bound to continue even in the absence of a final agreement and the importance of preserving harmony in that relationship, public policy demands that effect be given to those provisions which the parties by mutual agreement may have intended to apply in the governance of that relationship.” (Matter of Board of Educ., Malone Cent. School Dist., supra, p 419.)
The court, then, in remanding the case to Special Term, stated that since this "evidence” had not been presented at Special Term, and "other evidence may be presented (including perhaps, the actual terms of such subsequent contract as the parties may have in fact entered into) which tends to disprove the existence of an agreement to extend arbitration * * * provisions of the old contract” (Matter of Board of Educ., Malone Cent. School Dist., supra, p 420) it was not appropriate at that time to make a determination on the merits.
Although the Appellate Division, Third Department, in Malone (supra) makes no mention of the Triborough doctrine, it was urged to the court as a basis for reversal, as was the contention made in Matter of Betts (supra) that the new amendment of section 209 (subd 3, par [f]) of the Civil Service Law was a recognition by the Legislature of that doctrine. In fact, it was contended that the Poughkeepsie case was decided prior to such amendment and the latter "undercuts” the holding therein. However, the Third Department unequivocally rejected the latter argument when it stated that it would have concurred in Poughkeepsie if all that was involved was a question of enforcibility of an arbitration provision contained in an expired contract.
Special Term, in Matter of Board of Educ. Wyandanch Union Free School Dist. [Wyandanch Teachers Assn.] (NYLJ Dec. 28, 1976, p 16, col 2) reached a similar result as the Malone decision. There, after the termination of the agreement, while the parties were negotiating a successor contract, *826 arbitration was requested for a grievance. The board responded by commencing an action to declare the contract terminated and of no force and effect, and, by moving to stay arbitration by reason of no subsisting collective bargaining agreement. The respondent union cross-moved to compel arbitration. This cross motion was granted and the motion to stay denied.
The agreement therein specifically contained a survivorship provision, to wit: "In the event a successor contract or provisions are not agreed upon on or before the termination date of the present contract or provisions, all terms of the present contract and all working conditions will remain in effect until the successor contract or provisions have been entered into. Upon agreement all salaries, benefits and working conditions will be retroactive to the termination date of the present contract or provisions.” (Matter of Board of Wyandanch Union Free School Dist. supra, col 3.)
Special Term held that both contractually, as well as based upon public policy, a valid agreement subsisted after the termination date, requiring arbitration under the survivorship clause.
The Appellate Division, Fourth Department, had the same issue raised in Matter of Niagara Wheatfield Administrators Assn. (Niagara Wheatfield Cent. School Dist.) (54 AD2d 498).
There the respondent district appealed from an order confirming an arbitrator’s award. The arbitration was conducted under an agreement which expired on June 30, 1975. The agreement provided, however; "This contract shall become effective on date of signing and will continue in effect until 30 June 1975, except as amended in writing through mutual consent.” It was further provided therein that: "The current negotiated agreement and established fringe benefits between the Board of Education and the NWAA [petitioner] shall remain in effect until modified or changed by mutual agreement in subsequent negotiations.”
Before the expiration date of the contract, the board and the union conferred as to terms of a renewal contract to begin July 1, 1975. At that time, the board’s representative took the position that the board would not consider continuing a provision of the current contract insofar as it tied the salaries of administrators to those of the teachers. This statement had no effect on the current contract; nevertheless, the union filed a grievance. After the latter reached the third level of the *827 grievance procedures, an arbitrator was selected, without objection by the school board, and the matter proceeded to arbitration. The board contended that since the statement related to contemplated action after the expiration date of the contract, no basis for a grievance existed. The union countered by contending that the contract by its terms extended its terminal date beyond June 30, 1975, as to the ratio of salaries.
As to the board’s contention, the court stated: "The board surely had an arguable point, which if it had desired, it could have used as a basis for a motion seeking to stay arbitration.” (Matter of Niagara Wheatfield Administrators Assn., supra, p 500.)
Not having done so, the court held that the board was bound by the arbitrator’s award "if otherwise proper” by virtue of the voluntary submission to arbitration.
The court then considered an issue raised for the first time on appeal, to wit: that the arbitrator exceeded his power under CPLR 7511 (subd [b], par 1, cl [iii]) and, thus the award had to be vacated. The basis for this contention was that the contract provision for its continuation beyond its terminal date was ultra vires and "void as against public policy.”
The arbitrator had held that the survivorship clause of the agreement (par. D of art II) had a continuing effect "until a new contract is agreed to by the parties.” This construction the court stated "puts the board at a serious disadvantage and requires it to negotiate upon petitioner’s terms or continue indefinitely the compensation index contained in the 1973-1975 contract. As so construed, we conclude that such paragraph * * * is against public policy and hence void.” (Matter of Niagara Wheatfield Administrators Assn., supra, p 502.) However, as the court also pointed out, since the board had consented to arbitration, it also consented to the arbitrator’s interpretation of the survivorship clause, provided that such "interpretation did not violate public policy.” The court having found such violation of public policy existed, and being powerless under CPLR 7501 to pass upon the merits of the dispute, remitted the matter to the arbitrator to render an award which would not violate that public policy. To accomplish the latter, it suggested the arbitrator limit the continuation of the contract "for a reasonable time after June 30, 1975, in which the board and petitioner may negotiate a new contract.”
Respondent DFUT contends, at bar, that if this court should *828 hold that the survivorship clause likewise violates public policy, then, under Niagara Wheatñeld, arbitration should be granted on the basis that the subject contract provisions also remained in effect for a reasonable time after the termination date of the contract.
No opinion of the Appellate Division, Second Department, is dispositive of the issue herein presented, although the court in the Poughkeepsie case, refused to countenance an automatic continuation of the contract provisions to maintain the status quo pending renegotiation of a new contract.
Consistent with the latter, it appears to this court that the Niagara Wheatñeld decision is more consonant with the rationale of Poughkeepsie, and the survivorship clause herein is against public policy. Otherwise, as Niagara Wheatñeld succinctly points out, the board would be in a handicapped position, and at a serious disadvantage, because it either negotiates on the DFUT terms "or continue indefinitely” all the terms of the expired contract. Such a contractual provision which would permit this board, or any other public body, to vest in a union of its employees the power unilaterally to perpetuate for an indefinite or indeterminate period of time, determinable only at the sufferance of such union, wages and other terms and conditions of employment, regardless of the economic conditions of the school district or municipality, would be violative of the public interest and public policy.
In the leading case of Veazey v Allen (173 NY 359, 368) the court in speaking of public policy stated: "There are, however, other phases of public policy which are as enduring and immutable as the law of gravity. One of them is that, as applied to the law of contracts, courts of justice will never recognize or uphold any transaction which in its object, operation or tendency is calculated to be prejudicial to the public welfare.”
Provisions of contracts which are contrary to public policy are thus void and unenforcible as opposed to the interest of the public, even though the intent of the parties may have been good. (10 NY Jur Contracts, §§ 132, 136.)
Consequently, the contract survivorship clause herein contained in article X, section 2, that "Thereafter it shall continue in effect unless amended or superseded,” is null and void as contrary to public policy and the public interest.
The contention by respondent DFUT that this court should limit the duration thereof to a reasonable time to obviate this *829 taint against public policy, as was done in Niagara Wheatñeld, is without merit. The court there suggested that stratagem to the arbitrator solely to preserve the validity of the arbitrator’s award. The board, having consented to arbitration, was bound thereby as well as by the arbitrator’s interpretation of the contract provided the award did not violate public policy. The court having found the clause to be violative thereof, a semblance of legality could only be preserved by limiting the extension of the contract for the purposes of the arbitrator’s award to a reasonable time; otherwise the arbitrator would exceed his authority and the award would have to be set aside (CPLR 7511).
However, implicit in the court’s statement in Niagara Wheatñeld that "The board surely had an arguable point [that no contract subsisted after the termination date], which if it desired, it could have used as a basis for a motion seeking to stay arbitration” (Matter of Niagara Wheatfield Administrators Assn., supra, p 500), is a recognition that such stay should have been granted, in view of the court’s finding that the survivorship clause was against public policy. Such a stay, however, is the basis of this application; and, this court being powerless under CPLR 7501 to pass upon the merits of the dispute, if referred to arbitration, irrespective of whether the claim is tenable, may not submit to arbitration a dispute under a contract provision which is illegal as against public policy. Without the termination date of the subject contract extended by that provision, then the agreement expired on June 30, 1976, and with it, the provisions thereof for grievance and arbitration. It is elementary that arbitration may not be compelled without a predicate contract therefor. (Matter of Astoria Med. Group [Health Ins. Plan of Greater N. Y.], 11 NY2d 128, 132-133; CPLR 7501.)
The motion for a stay of the arbitration is granted, and the cross motion to dismiss the petition is denied.