OPINION OF THE COURT
Thomas F. McGowan, J.
The Buffalo Police Benevolent Association (hereinafter PBA) has moved to compel arbitration of seven separate grievances. The City of Buffalo (hereinafter City) previously moved to stay arbitration of these same grievances, *1092 making each motion returnable separately on separate days. For purposes of economy, this court will consolidate and determine all motions.
The facts of this case are somewhat unique. The prior collective bargaining agreement between the City and the PBA terminated on June 30, 1980. The parties were without an agreement between July 1, 1980 and February 10, 1982. On this latter date a new agreement was signed. Article XXVI of that agreement provided that it “shall be effective as of the 1st day of July, 1980 and shall remain in full force and effect until the 30th day of June, 1982.” All the grievances here considered arose after July 1,1980 and before February 10, 1982. They were processed through step 3 of the grievance procedure which had been in effect under the previous contract.* However, rather than proceeding to step 4, the arbitration stage, by submitting the grievance to an impartial arbitrator within 10 days of the police commissioner’s answer, the PBA did nothing until after the new contract was executed on February 10,1982. Within 10 days of the signing of that agreement, the PBA filed a demand for arbitration in each case.
The City contends, first, that there was no contract in effect when the underlying occurrences took place and when the grievances were filed, and that therefore there was no contract to violate. Secondly, the City claims that if the contract is given retroactive effect, the 10-day time limit for filing the demand for arbitration should also be given effect. The PBA argues, on the other hand, that step 4 of the grievance procedure was not effective until the new contract was signed. For it ta have demanded arbitration without a contract would have proved to be an exercise in futility. Further, the PBA contends that matters concerning the timeliness of the filing of the demand for arbitration are for the arbitrator, and not the court, to decide.
The applicable principles of law governing motions to stay or compel arbitration were set forth by the Court of Appeals in Matter of County of Rockland (Primiano Constr. *1093 Co.) (51 NY2d 1, 6-7): “On motions to stay or to compel arbitration there are three threshold questions to be resolved by the courts: whether the parties made a valid agreement to arbitrate, whether if such an agreement was made it has been complied with, and whether the claim sought to be arbitrated would be barred by limitation of time had it been asserted in a court of the State”. Arguably, had the PBA submitted the subject grievances to arbitration before the signing of the new contract, the City could have successfully obtained a stay of arbitration on the grounds that the first threshold question had not been resolved, i.e., there was no agreement to arbitrate then in existence (Matter of Board of Educ. [Poughkeepsie Public School Teachers Assn.), 75 Misc 2d 931, affd 44 AD2d 598; see, also, Matter of Board of Educ. [Malone Cent. Teachers Assn.], 53 AD2d 417). This in spite of the fact that the City heard the grievances (see Matter of Port Chester-Rye Union Free School Dist. [Port Chester Teachers Assn., Local 2934, AFT], 10 PERB 3133, 3134-3135). Delaware Val. Cent. School Dist. (Delaware Val. Faculty Assn.) (54 NY2d 613, revg 79 AD2d 834) is not to the contrary. There, certain contract provisions purported to extend the life of the agreement beyond its stated term. The implication of that case is that it is for the arbitrator to interpret substantive contract provisions concerning the duration of the contract even if these same provisions bear on the arbitrator’s very authority to arbitrate. It is not clear whether the reasoning of Delaware Val. would apply where, as here, there were no contract provisions extending the prior agreement.
Assuming, then, that absent the consent of the City, a demand for arbitration by the PBA would have been stayed prior to February 10, 1982, the question now is whether the PBA is in any better position because of the signing of the contract. As noted above, article XXVI of the agreement provides that it “shall be effective as of the 1st day oí July, 1980”. Similar language has been interpreted to give retroactive effect to a collective bargaining agreement (Matthews v Jeremiah Burns, Inc., 205 Misc 1006, 1013). Moreover, there is nothing in this agreement that specifically exempts article XI from the duration provisions of article XXVI. Finally, there was an agreement to arbitrate *1094 in effect on the date of the submission of the request to arbitrate (see Matter of County of Rockland [Primiano Constr. Co.], supra; Matter of Wappingers Cent. School Dist. v Wappingers Congress of Teachers, 51 AD2d 766). The fact that the grievances arose while there was no agreement to arbitrate in existence is not determinative (see Williamsport Area Community Coll. Educ. Assn. v Williamsport Area Community Coll., 43 Pa Comm 270).
The second and final threshold question (assuming no Statute of Limitations problem) is whether the arbitration agreement has been complied with. It is for the court to determine whether there is a condition precedent to arbitration and whether it has been performed. Questions of compliance with conditions in arbitration, however, such as contractual limitations of time within which the demand for arbitration must be made, are for the arbitrator (Matter of County of Rockland [Primiano Constr. Co.], supra). Likewise, the arbitrator must determine questions regarding compliance with contractual step-by-step grievance procedures (Matter of City School Dist. of City of Poughkeepsie [Poughkeepsie Public School Teachers Assn.], 35 NY2d 599; Matter of City of Poughkeepsie v City of Poughkeepsie, Unit, Local 486, Civ. Serv. Employees Assn., 78 AD2d 653). In the instant case, there is no allegation that the PBA has failed to perform a condition precedent. The 10-day time limit for requesting arbitration is a condition in arbitration, not a condition precedent. The question of compliance with that condition is for the arbitrator. As for the grievances of Bagen and Krawczyk, the City alleges failure to comply with the time limits of the grievance procedure itself. This concerns compliance with the step-by-step grievance procedure and must also be resolved by the arbitrator.
A separate question is raised regarding the grievance of Gregory Abrams. It is undisputed that Abrams was advised by letter during his probationary term that he was “terminated due to the unsatisfactory performance of your service.” Officer Abrams promptly filed a grievance alleging that the City had failed to comply with article 12 of the agreement entitled “Discipline and Discharge”. Section 12.1(a) of that article states in pertinent part that “A *1095 person shall not be removed * * * except for incompetency or misconduct * * * and then only after a hearing upon stated charges.” The City claims that this contract provision applies to permanent rather than probationary employees and that termination of probationary employees is within the scope of section 1 of rule 17 of the Rules of the Buffalo Municipal Civil Service Commission. The City also argues that the contract provision would be illegal and contrary to the Civil Service Law if applied to probationary employees.
Where a motion to stay or compel arbitration concerns a public employee organization, the first threshold question of whether there is a valid agreement to arbitrate may require a court to determine whether the disputes in issue are arbitrable. In making this determination, “a court can only concern itself with two questions, to wit: (1) whether arbitration of the subject matter of the dispute is permissible under the Taylor Law (Civil Service Law, art 14) and is allowable as a matter of public policy; and (2) whether the parties agreed by the terms of their arbitration clause to submit such disputes to arbitration.” (Matter of Franklin Cent. School [Franklin Teachers Assn.], 51 NY2d 348, 355.) Here, the arbitration clause of the contract is clearly broad enough to encompass the subject matter of the dispute. There is nothing in the agreement to indicate that article 12 does not apply to probationary police officers. Likewise, the Taylor Law does not require that disputes over the termination of probationary employees be excluded from arbitration. In addition, there is no broad public policy which prohibits the City from limiting its right to terminate a probationary employee during the probationary period (see Board of Educ. v New York State United Teachers, 51 NY2d 994; Board of Educ. v Barni, 49 NY2d 311). The only remaining question, therefore, is whether public policy, as embodied in the Civil Service Law and the Rules of the Buffalo Municipal Civil Service Commission (hereinafter Rules), precludes arbitration of this dispute.
Section 1 of rule 17 of the Rules provides that the appointment of a police officer “shall be for a probationary term of not less than three months nor more than twelve *1096 months.” Section 2 of rule 17 provides that a probationary employee’s employment “may be terminated” if “the conduct or performance of a probationer is not satisfactory.” Section 9 of rule 17 provides as follows: “Nothing contained in this rule shall be construed to limit or otherwise affect the authority of an appointing authority pursuant to section seventy-five of the Civil Service Law at any time during the probationary term, to remove a probationer for incompetency or misconduct.” None of these provisions prohibits the use of procedures such as those set forth in the contract. Indeed, the contractual procedures further the goals of the Rules by providing a method for determining whether, in fact, the conduct or performance of the probationer is unsatisfactory. There is no attempt to prohibit the discharge of incompetent or unsatisfactory probationary employees. Further, nothing in section 63 or 75 of the Civil Service Law prohibits the City from affording the protections set forth in the agreement.
In sum, it is neither illegal nor against public policy for a municipality to agree to provide hearings for probationary employees it seeks to terminate. This is not to say, and this court does not decide, that the City has agreed to do this in the instant case. It is for the arbitrator to interpret the applicability of the discipline and discharge portion of the agreement to probationary employees.
Thus, the grievance of Officer Abrams, as well as the grievances of the other officers named in the pleadings, are subject to arbitration. Accordingly, the PBA’s motion to compel arbitration is granted and the City’s several motions to stay arbitration are denied.

 Although the court has not been provided with a copy of the previous contract, it is presumed that article XI of the present contract, entitled Settlement of Disputes, corresponds with like provisions of that previous agreement.