WASHINGTON–BALTIMORE NEWSPAPER GUILD, LOCAL 35, OF the NEWSPAPER GUILD, AFL–CIO–CLC, Plaintiff,

v.

The WASHINGTON POST COMPANY, Defendant.

Civ. A. No. 77–0537.

United States District Court, District of Columbia.

Nov. 15, 1977.

Alan D. Eisenberg, Washington, D. C., for plaintiff.

Kenneth F. Hickey, Washington, D. C., for defendant.

## MEMORANDUM ORDER

JOHN H. PRATT, District Judge.

Plaintiff Washington-Baltimore Newspaper Guild seeks a declaratory judgment that the terms of an expired collective bargaining agreement are still in effect between it and defendant Washington Post, and an injunction directing arbitration of grievances resulting from various employee discharges. Jurisdiction lies in this Court pursuant to section 301 of the National Labor Relations Act, as amended, 29 U.S.C. § 185.

A. *Factual Background.* In May 1974, the parties executed a collective bargaining agreement with an expiration date of March 31, 1976. The agreement provided that either party could advise the other of its desire to enter into a new agreement within a specified time period prior to the expiration date, and further provided that if either party so advised the other the terms of the agreement would govern their relationship during the continuance of negotiations. On January 27, 1976, pursuant to the agreement then in force, the Guild advised the Post that it wished to enter into a new agreement. On January 29, 1976, a rival union filed a petition with the National Labor Relations Board by which it sought to represent Post employees in upcoming negotiations. Pursuant to the statutory mandate to refrain from lending support to any labor organization, the Post refused to negotiate with the Guild during the pendency of the representation dispute. 29 U.S.C. § 158(a)(2); *Midwest Piping Co., Inc.,* 63 NLRB 1060 (1945).

On April 1, 1976, defendant sent notice to plaintiff that it was terminating the collective bargaining contract and that it would not be bound by the agreement because there was no "continuance of negotiations." After a representation election, the NLRB certified plaintiff as the collective bargaining representative of the affected employees on July 29, 1976; as a result of plaintiff's request of August 31, 1976, negotiations resumed October 11, 1976, and continue to this time.[1]

---

1. While these negotiations could lead to arbitration of the the subject grievances, such arbitration would be the result of a provision of the new contract. This case presents the distinct question of whether arbitration is mandated pursuant to the expired contract, and we there-

In August and September of 1976 four employees in the subject unit were discharged by defendant Post for conduct occurring after June 1, 1976. Plaintiff protested these discharges at grievance meetings November 3, 1976 and January 14, 1977, and on February 14, 1977 advised the Post that it was prepared to move the discharges to arbitration.

B. *Analysis.* Defendant insists that it is under no duty to arbitrate these grievances which arose after the expiration of the collective bargaining agreement. While recognizing that the contract provides for applicability of its terms beyond its expiration date when negotiations for a new contract are in progress, defendant asserts that this provision does not mandate arbitration of these grievances because (1) arbitration is not a "term" of the contract, (2) there was no continuance of negotiations, and (3) the contractual relationship was terminated June 1, 1976 by operation of the April 1 notice.

■ 1. Terms of the Contract. This Court undertakes its analysis of this controversy with recognition of the strong legal presumption favoring arbitrability of labor disputes. *See United Steelworkers of America v. Gulf Navigation Co.,* 363 U.S. 574, 584, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). In addition, the Post and the Guild established a presumption of arbitrability for their employment relationship: Article XX(2) of the agreement provided that "[a]ny matter arising from the application of this Agreement, which the Guild and The Post have not been able after reasonable effort to settle, shall be submitted to arbitration, . . . ." Discharges are clearly subject to arbitration.

■ This Court is not persuaded by defendant's argument that "terms" of the contract is confined to wages, hours, and working conditions. We reach this conclu-

sion upon consideration of the contract in its entirety which we find clear and unambiguous. We do not believe defendant's offer of parole evidence regarding the intent of the parties, aside from the probable inadmissability of said evidence, to create a genuine issue of material fact sufficient to make summary judgment an inappropriate device for resolution of this controversy. This Court notes particularly the use of the word "terms" in Article I of the Agreement in a broad context, the failure of the parties to organize the Agreement consistent with the distinction advanced by defendant, and the noticeably strong concern of the parties regarding arbitration as evidenced by repeated references thereto in the collective bargaining agreement.[2] Practical concerns also influence our decision: plaintiff and defendant have been parties to a series of collective bargaining agreements for over 35 years, and it would do violence to the parties' scheme of coexistence if the Post were permitted to strip union members of their arbitration rights—while in all other respects binding the employees to contract terms—by the simple expedient of prolonging negotiations regarding a successor contract. We believe that the word "terms" was used to indicate only that the contract itself would no longer be viable so that the parties would be obliged to negotiate a new agreement.

■ 2. Continuance of negotiations. Defendant argues that the terms of the Agreement of May 2, 1974 were not binding after April 1, 1976 since negotiations were not in progress on that date. While defendant is correct in its assertion that there was no continuance of negotiations on April 1, the absence of negotiations did not excuse defendant from its obligation to respect the contract terms. But for the existence of the representation dispute initiated by the petition of a rival union on January 29, negotiations would have commenced before

fore determine that the ongoing negotiations do not deprive this Court of jurisdiction.

2. For example, discharges. including claimed economy dismissals, are specifically made the subject of arbitration pursuant to Article

XX(2). Article IX(3), (4)(a). On the other hand, "Questions of renewal or amendment of this Agreement, or termination thereof on or after the expiration date, need not be the subject of arbitration." Article XX(2).

April 1. The doctrine of temporary impossibility is applicable to these circumstances since the length of the delay could be easily estimated and the employer would be required to render performance substantially similar to that originally contemplated upon termination of the impossibility. *See* 6 *Williston on Contracts* § 1957 (1938 Rev. Ed.); *see also Local 368, United Federation of Engineers v. Western Electric Co.,* 359 F.Supp. 651, 656 (D.N.J.1973) (general canons of contract construction available for ascertaining intent of parties in labor context). We therefore conclude that while the negotiation requirement was temporarily excused, the parties were not excused from other responsibilities arising from the contract.

We find further support for this determination in the policy of the National Labor Relations Act. The *Midwest Piping* doctrine implements a Congressional desire to protect representational rights by insulating the employees' selection of a bargaining agent against interference by an employer. It would directly contravene that policy if an employer were permitted to hide behind this doctrine to deprive employees of a negotiated contract right.

3. April 1 Notice of Termination. In support of its cross-motion for summary judgment defendant argues that its letter of April 1, 1976 constituted notice of intent to terminate the Agreement which termination was effective on June 1, citing section 8(d) of the National Labor Relations Act. 29 U.S.C. § 158(d). This position is untenable for two reasons. First, we have determined that the contract of May 2, 1974 expired by its terms on April 1, 1976: only the terms of the contract were effective beyond that date, and they were not susceptible of termination pursuant to section 8(d) of the Landrum-Griffin Act. Secondly, even if the contract was still viable, defendant did not by that notice comply with the requirements of section 8(d) to effectuate

termination. The notice did not refer to section 8(d) or the 60-day requirement; defendant did not notify the Federal Mediation and Conciliation Service; and the defendant did not offer to negotiate with plaintiff regarding modifications. Admittedly satisfaction of some of the statutory requirements might be inappropriate during a representation dispute; again, however, the Post cannot be permitted to convert this dispute to its own advantage by attempting to alter the existing employment relationship. While we recognize caselaw that excludes strict compliance with the requirements of section 8(d) in other factual contexts, we reach our determination because of the unique circumstances presented herein and because defendant's failure to comply with *any* of the provisions of section 8(d) indicates strongly that the proffered explanation of the April 1 communication is merely an *ex post facto* attempt to import significance to it.

c. *Conclusion.* In view of our determination that the arbitration provisions are "terms" of the agreement and remained operational beyond April 1 by virtue of said agreement, it is not necessary to confront the question of the propriety of directing arbitration after the termination of a collective bargaining agreement.[3]

Upon consideration of the motions of both parties, memoranda and points and authorities in support thereof and in opposition thereto, and for the foregoing reasons, it is by the Court this 14th day November, 1977,

ORDERED, that the motion of plaintiff for summary judgment be, and the same hereby is, granted to the extent that defendant shall be directed to resolve all grievances within the meaning of Article XX of the collective bargaining agreement of May 2, 1974, pursuant to the provisions of that contract relating to grievance and arbitration processing; and it is further

---

**3.** This dispute deals with arbitration requirements associated with employment discharges, with a resulting impact on the right to job security which we believe to be "an obligation created by the expired agreement." *Nolde*

*Brothers Inc. v. Local No. 358, Bakery and Confectionary Workers Union, AFL–CIO,* 430 U.S. 243, 252, 97 S.Ct. 1067, 1072, 51 L.Ed.2d 300 (1977).

ORDERED, that the motion of defendant for summary judgment be, and the same hereby is, denied; and it is further

ORDERED, that this action be, and the same hereby is, dismissed.