**OIL, CHEMICAL AND ATOMIC WORKER'S INTERNATIONAL UNION LOCAL NO. 4–23 and Leo Max Hildabridle, Jr.**

v.

**AMERICAN PETROFINA COMPANY OF TEXAS.**

**Civ. A. No. B–83–195–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

May 8, 1984.

---

M. Diane Dwight, Thomas Swearingen, Provost, Umphrey, McPherson & Swearingen, Port Arthur, Tex., for plaintiff.

Durwood D. Crawford, Goins, Underkofler, Crawford & Langdon, Stephen Kardell, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

JOE J. FISHER, District Judge.

This labor dispute arises from an event which occurred during the eleven-month-long Oil, Chemical and Atomic Worker's Union strike of the Port Arthur American Petrofina Company Plant in 1982. During that strike, Max Hildabridle, an O.C.A.W. member, was involved in some picket-line violence which resulted in his being terminated by the Fina Company. This termination occurred when no union contract was in effect and no arbitration procedures were in place. The Union seeks an Order from the Court directing Fina to arbitrate the issue of Leo Hildabridle's discharge; and defendant Fina has responded that since the strike occurred after a contract had expired, Hildabridle was not protected by the contract, and the company was free to deal with Hildabridle without arbitration.

This Court has jurisdiction of this case under Sec. 301(a) of the National Labor Relations Act, as amended, 29 U.S.C. Sec. 185 (1978). This case was tried to the Court on March 9, 1984, and post-trial briefs were submitted by both parties. After a careful review of the evidence and the briefs in what appears to be a case of first impression in this Circuit, this Court finds that in this context, Hildabridle was unprotected by any continuing or retroactive contract rights. Therefore, no order to arbitrate will issue and judgment will be entered for defendant.

## I.  THE BACKGROUND

The facts in this case are undisputed. In late 1981, the war clouds were gathering at the Fina Refinery in Port Arthur, Texas. A collective bargaining agreement between the Company and Local 4–23 of the O.C.A.W. provided that the agreement would stay in effect through midnight January 7, 1982 unless either party served notice to the other "not less than sixty days prior to the desired termination date." On November 1, 1981, the Union served the required notice on Fina that it would terminate the said agreement at 12:01 a.m. on January 8, 1982. Negotiation occurred in an attempt to avert the walkout, but to no avail. On January 8, 1982, the Union struck Fina.

Picket lines were set up, which Union employees refused to cross. The Plant, however, continued to operate with its management personnel. The situation was undeniably tense and ugly. On February 20, 1982, an incident occurred on the picket line involving Hildabridle and several company guards. The guards alleged that in the middle of an argument Hildabridle had pulled a knife and threatened them. The police were called and the matter was investigated. Charges were filed against Hildabridle, though no conviction resulted.[1]

█  The company investigated the incident and concluded that it was serious enough to warrant disciplinary action against Hildabridle. The company wrote O.C.A.W. officials and Hildabridle to inform them of the investigation and attempted to schedule an informal hearing with Hildabridle to hear his side of the events. The only answer the company re-

---

**1.** This Court does not reach the merits of Hildabridle's case. In fairness, however, the Court will note that a state court jury acquitted Hilda-bridle of a misdemeanor charge of a terroristic threat on November 8, 1983. All other charges were later dismissed.

ceived was a letter from Hildabridle's attorneys protesting the investigation and complaining that Hildabridle would not attend any hearing unless his attorneys could be present. The attorneys also made a statement in their letter that has returned to haunt them. Referring to the company's proposal for a hearing, the attorneys stated "as we all are aware, the labor contract expired at 12:01 a.m. on January 8, 1982. *Upon its expiration, the grievance and arbitration procedure also expired*" (emphasis added).[2]

After some further futile correspondence between the parties, the Company acted on its own. After reviewing the evidence, the Company concluded that Hildabridle should be discharged. This decision was made after a meeting of Company officials and was basically the decision of the Company's Vice-President of Employee Relations. Thereafter, by a May 27, 1982 letter, the Company informed Hildabridle that he was terminated as of that date.

The Union then took steps to reinstate Hildabridle. Unfair Labor Practice charges were filed against the Company with the National Labor Relations Board, contending that Hildabridle's discharge was the result of his union activity. The N.L.R.B. refused to act on this charge at both the regional and national level, and eventually the charge was dismissed.

Meanwhile, negotiations to end the strike began. In the final discussions that accompanied the strike's settlement, the Company and the Union discussed Hildabridle's discharge. The Union wanted the plaintiff reinstated; or, if the Company would not agree to this, to have the matter arbitrated. The Company refused both requests. Instead, the Company and the Union agreed to disagree. Within the "Return to work understanding" executed by the O.C.A.W.

and Fina in settlement of the strike, a specific clause outlined the parties' conflicting positions on the Hildabridle discharge, leaving the matter to future resolution.

On December 20, 1982, the Union went back to work. That same day, the Union filed a grievance under the *new* contract claiming Hildabridle had been terminated without just cause. Once again, the Company refused to arbitrate the matter. Thus, the Union and Hildabridle brought suit in this Court.

## II. THE LAW

■ It is well-settled that Federal labor policy favors the settling of labor disputes by arbitration. *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (The Steelworker's Trilogy). Yet, it is also well-settled that the obligation to arbitrate a dispute is totally a creature of contract between the parties. No one can be forced to arbitrate a dispute without his express agreement to do so. *Gateway Coal Co. v. United Mine Workers of America, Et Al.,* 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). Since there was no contract in effect between the O.C.A.W. and Fina at the time of the May 27 letter terminating Hildabridle, the plaintiffs can compel arbitration in this case only by arguing that the discharge was covered by the residual effects of the old contract or by the retroactive effects of the new contract.

This is, in effect, what the plaintiffs have attempted to do here. Their claim is based on two arguments. First, they claim that the language of the expired contract man-

---

**2.** The plaintiffs have strenuously objected to the admission of this letter into evidence. They claim the letter is unfairly prejudicial and has been improperly characterized as an admission against interest. The Court is convinced, however, that the letter is not unfairly prejudicial, and that it is admissible under Fed.Rule Evid. 803(24), the residual exception to the hearsay rule, in that the letter has circumstantial guarantees of trustworthiness. It is used to illustrate the negotiations that occurred during the strike period.

dated that its provisions carry over into a situation presented by the instant case, thus compelling arbitration. Second, and alternatively, the plaintiffs argue that Hildabridle's termination could not have occurred on May 27, 1982 as a matter of law, and thus, his termination could only have occurred when the new contract took effect. This being so, the new contract directed that a grievance be filed, and that the matter go into arbitration. For the reasons outlined below, this Court finds neither argument persuasive.

## A. THE ISSUE OF POST–CONTRACT ARBITRABILITY: NOLDE AND ITS PROGENY.

At first blush, it would seem that no clause or requirement of a contract could survive the expiration of a contract. Yet, the plaintiffs' argument in this case, though not applicable in these circumstances, is based on good authority. In *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL–CIO*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), the Supreme Court addressed the general issue. A contract had terminated, and a company has closed a plant. A dispute arose over whether severance pay would be paid as a fringe benefit in the circumstances. The court held the dispute was arbitrable. The court indicated as a ground for its decision that there were strong reasons to believe that the parties did not intend their arbitration duties to terminate automatically with the contract. Otherwise, the employer would be allowed to cut off all arbitration of severance pay claims by simply terminating the contract and then closing the plant—an illogical and unjust result. *See Nolde*, 430 U.S. at 253, 97 S.Ct. at 1073. It is important to note that in *Nolde*, the severance pay was a benefit that was in place prior to the contract's termination.

Since *Nolde*, several cases have addressed the issue of post-contract arbitrability. From these cases, an important pattern has emerged. It appears that courts will compel arbitration after a contract has expired in two circumstances. When a case involves the accrued rights of employees, such as pension benefits or disability payments, courts will not allow contract termination to extinguish those rights without arbitration of the issue. *See e.g. United Steelworkers of America v. Fort Pitt Steel Casting Division Conval-Penn, Inc.*, 635 F.2d 1071 (3rd Cir.1980); *Federated Metals Corporation v. United Steelworkers of America, Et Al.*, 648 F.2d 856 (3rd Cir.1981). Furthermore, arbitration will be ordered in situations where the dispute centers around an event that took place either totally or in part during the term of the contract. *See e.g. Diamond Glass Corp., v. Glass Warehouse Workers & Paint Handlers Local Union 206*, 682 F.2d 301 (2d Cir.1982). An event can be construed as occurring within a contract when the contract terms are deemed to continue past the contract's formal expiration date.

Several cases have dealt with the issue of a discharged employee. Some of these cases have required arbitration of a discharge even after a contract has terminated. *Each* of these cases fits into one of the above two exceptions. Arbitration was ordered in *Glover Bottled Gas Corp. v. Local Union No. 282*, 711 F.2d 479 (2nd Cir.1983), even though a contract had expired. In that case, however, employees had been fired because they refused to take a polygraph test concerning a recent theft. The termination occurred after the contract's expiration; but all other significant events—the theft and the refusal to take the test—occurred *during* the contract term. In *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883 (2nd Cir.1983), a company had signed a contract while a member of an employer's association. The company later withdrew its membership from the association, and a short time thereafter discharged an employee. When the employee sought arbitration, a district court ordered it, but also ordered that the issue of withdrawal from the association be arbitrated first. Thus, the real issue was whether the contract was still in effect. The circuit court affirmed. Other cases ordering arbi-

tration of a discharge in this context seemed to be based on a finding that the contract *itself* had continued, and thus, the arbitrable event occurred under its terms.

■ The plaintiffs claim that Hildabridle can fit within one of the exceptions. With regard to the line of cases that accept an accrued right as a reason to compel arbitration, Hildabridle alleges that he had a right to job security and a right not to be discharged except for just cause. The Court agrees that these rights are important. Yet, these rights are of a much broader nature than those accrued rights recognized by *Nolde* and subsequent cases. Being of a broader and much different nature, these rights are protected by different means—such as the right to collectively bargain, the right to belong to a union, and so on. It is not something protected by compelling arbitration in this context, and the plaintiffs have not cited a case that would so hold.

■ Likewise, the plaintiffs try to fit themselves within the second "continuing contract" exception. Their argument fails here, as well. The plaintiffs note that the Company and Union had agreed to arbitration in another matter, though the arbitration was scheduled long after the contract had expired. Yet, the grievance giving rise to this arbitration clearly arose during the regular contract term. Also introduced into evidence was a list of pre-existing disputes carried over for arbitration under the new contract. Once again, every grievance on the list was filed before the expiration

of the old contract. The conduct of the parties in this matter does not indicate a continuing intent to arbitrate events which occurred while no contract was in force; instead, it reflects a willingness of the Company to take care of grievances arising under the earlier contract. These grievances would fit in neatly with the exceptions outlined above. The grievance in the instant case does not. The fact that they can be so easily distinguished points up the fallacy of the plaintiffs' argument.[3]

■ By the above arguments, Hildabridle asks this Court to adopt new facts as fitting within the *Nolde* exceptions. Alternatively, the plaintiffs ask the Court to accept a new rule of law: That the "duty to arbitrate survives independent of contract expiration unless (1) there is language clearly to the contrary in the collective bargaining agreement; or, (2) there is conduct of the parties that is so clear that a contrary intent is established." *Plaintiffs' Brief at 10.* This rule would be founded neither on sound law nor good policy. Plaintiffs' authority for his rule comes from a standard laid out in *Fort Pitt, supra,* 635 F.2d at 1075. Yet, *Fort Pitt* in turn relied on *Nolde;* and it is apparent that its standard is simply an overbroad misinterpretation. Other decisions have limited *Nolde* to apply only to accrued rights and benefits; and this Court believes this is the proper view. Otherwise, almost every clause and term of a collective bargaining agreement would stay in effect after the agreement was terminated. This certainly would not reflect the intention of

**3.** The plaintiffs have cited two decisions at the District Court level ordering arbitration of a discharge. Neither are applicable, nor persuasive. In *Newspaper Guild v. Central States Publishing Co.,* 451 F.Supp. 1112 (D.C.Pa.1978), the court found that at the expiration of a labor contract, the company and the union had agreed to negotiate, and had further agreed to abide by the terms of the old agreement while negotiations continued. *Id.* at 1115. Furthermore, when a new contract was signed, the parties expressly agreed that its terms would apply retroactively to the expiration date of the old agreement *Id.* The event causing the discharge can be viewed as occurring while contract terms were in effect. Arbitration was also ordered in *Washington-Baltimore Newspaper*

*Guild v. The Washington Post Co.,* 442 F.Supp. 1060 (D.D.C.1977). There, however, an agreement between the company and a union provided that the terms of the old agreement would govern while negotiations continued. Negotiations ended when a rivalry developed between two unions over which was the proper NLRB representative. The court would not allow the company to escape arbitration in these circumstances. But it was a unique circumstance; and the court specifically stated that it was "not necessary to confront the question of the propriety of directing arbitration after the termination of a collective bargaining agreement" *Id.* at 1063. Clearly, neither case fits the instant cause.

the parties; but it would certainly lead to a raft of litigation.

### B. THE RETROACTIVE EFFECT OF THE 1982 CONTRACT.

■ Hildabridle has yet another argument, unrelated to the continuing duty to arbitrate claim. This argument places Hildabridle in the position of an economic striker, who, according to accepted Federal labor policy [*See N.L.R.B. v. International Van Lines*, 409 U.S. 48, 93 S.Ct. 74, 34 L.Ed.2d 201 (1972)], cannot be terminated without being permanently replaced. Since, the plaintiffs argue, Hildabridle was never permanently replaced, he could not have been terminated during the strike period; instead, Hildabridle's termination only became effective on December 20, 1982, the date of the new contract. As such, plaintiffs contend, Hildabridle's termination was arbitrable under the *new* contract.

This argument must also fail. It is well-settled in this Circuit that a dispute over events that occurred prior to the execution of a collective bargaining agreement is not arbitrable where it is clear the parties did not agree to arbitrate it. *Local 787 IUE v. Collins Radio Co.*, 317 F.2d 214 (5th Cir. 1963). Contrary to plaintiffs' argument, there is nothing in the record to indicate that the company ever intended to arbitrate Hildabridle's discharge. In the "Return to Work Understanding" that presaged the end of the strike, it was specifically stated "As to disciplinary action previously taken during the strike both the company and union preserve their positions as to the application of the grievance procedure." From the evidence presented, it is apparent that disciplinary action had been taken during the strike regarding only one employee: Hildabridle. Thus, this clause in the "Return to Work Understanding" has to refer to him. Thus, the "Understanding" specifically preserved the company's position concerning Hildabridle. The plaintiffs have not buttressed their argument concerning the applicability of the new contract with either good facts or case law; and there-fore, there is nothing to dissuade the Court from saying the rule of *Collins Radio* should apply. Clearly, the Company never intended to arbitrate Hildabridle's dismissal, which occurred on the earlier date.

### III. CONCLUSION

In sum, there is nothing in the present action that would cause the Court to compel arbitration. There was no contract in effect providing for arbitration. No reason has been shown for ruling that the contract's arbitration clause survived the contract's expiration. Finally, no intent to arbitrate has been proven. It is therefore,

**ORDERED, ADJUDGED** and **DECREED** that Judgment be entered for Defendant American Petrofina Company and against Plaintiffs Oil, Chemical, and Atomic Worker's International Union Local No. 4–23 and Leo Max Hildabridle, Jr., in that no order compelling arbitration will issue.