OTTAWA COUNTY v JAKLINSKI

Docket No. 73329. Argued April 3, 1985 (Calendar No. 8).—Decided
November 7, 1985. Rehearing denied 424 Mich 1204.

Diedre Jaklinski was notified by Ottawa County and the Ottawa
County Sheriff's Department that she would not be reappointed
as a sheriff's deputy. She and the Police Officers Association of
Michigan, her union, filed a grievance-arbitration request, con-
testing the failure to reappoint her on the ground that the
failure was not for just cause, contrary to the provisions of a
previous collective bargaining agreement. The employers de-
nied the request, asserting that the agreement had expired and
that no successor agreement had been reached. The county and
the sheriff's department brought an action in the Ottawa
Circuit Court against Ms. Jaklinski and the union, seeking a
stay of arbitration proceedings. Ms. Jaklinski and the union
filed a counterclaim. The court, John H. Piercey, J., ordered
that the arbitration of the failure to reappoint Ms. Jaklinski be
permanently enjoined, holding that the employers were not
bound by the former agreement and that the provisions of a
new agreement which became effective after the grievance-
arbitration request was filed were not given retroactive effect.
In an unpublished opinion, the Court of Appeals, R. B. BURNS,
P.J., and MACKENZIE and J. L. BANKS, JJ., reversed and or-
dered arbitration (Docket No. 63876). The plaintiffs appeal.

In opinions by Chief Justice WILLIAMS, joined by Justice
RYAN, and by Justice BRICKLEY, joined by Justice RILEY, the
Supreme Court held:

The right to grievance arbitration provided in a collective

REFERENCES FOR POINTS IN HEADNOTES

[1-6] Am Jur 2d, Labor and Labor Relations §§ 405, 1838 et seq., 1941.
    Union's refusal or failure to process employee grievance as unfair
    labor practice under amended National Labor Relations Act. 5
    ALR Fed 372.
[3-5] Am Jur 2d, Labor and Labor Relations §§ 1764-1775.
    Bargainable or negotiable issues in state public employment labor
    relations. 84 ALR3d 242.
    Validity and construction of statutes or ordinances providing for
    arbitration of labor disputes involving public employees. 68
    ALR3d 885.

bargaining agreement survives the expiration of the agreement where the dispute concerns rights which could accrue or vest during the term of the contract. The right of an employee not to be discharged except for just cause does not survive expiration of a collective bargaining agreement because it is not a right which can accrue or vest during the term of the agreement.

1. Public employers must bargain to impasse in good faith with regard to mandatory subjects of bargaining such as grievance and arbitration proceedings. Once such a subject is raised by a party during collective bargaining, neither party may take unilateral action prior to impasse. In this case, the request for grievance arbitration was made and denied after the employers and the union had negotiated to impasse, at a time when the employers no longer had a duty not to alter the grievance arbitration mechanism in the former agreement. Further, enforcement of the duty is within the exclusive jurisdiction of the Michigan Employment Relations Commission.

2. Under 1969 PA 312, police officers and fire fighters and their public employers are required to undergo binding interest arbitration where, during bargaining involving terms to be included in a new agreement, the parties have negotiated to impasse. Once interest arbitration is invoked, neither party may alter existing wages, hours, or other conditions of employment which are in existence at the time. The conditions of employment are "frozen" in place during the pendency of arbitration. Compulsory arbitration is not available under the act for grievances regarding interpretation of existing or expired agreements, however; nor does invocation of binding arbitration revive rights which terminated upon the expiration of an agreement.

3. The right to grievance arbitration survives expiration of a collective bargaining agreement under the common law where the dispute concerns rights which could accrue or vest during the term of the agreement. The duty to arbitrate arises by agreement; absent agreement, neither party to an agreement would be obligated to submit to arbitration. Such agreements are entered into because the parties perceive them to be in their self-interest. Likewise, termination of contracts at specified times is perceived to be in the mutual self-interest of the parties. Arbitration in labor relations is favored under Michigan and federal law because it implements preferences expressed by the parties to labor agreements. A determination that the right to grievance arbitration survives the expiration of a collective bargaining agreement where the dispute involves

rights, such as pension, disability, seniority, and vacation benefits, and the parties have agreed that the rights can accrue or vest during the life of the agreement, effectuates the original intent of the parties. An employee should not be deprived of already accrued or vested rights because they become ripe for enjoyment following the expiration of the collective bargaining agreement. The employee remains entitled to these vested rights and to the dispute resolution process the parties agreed to use to enforce them. The substantive right to continue to accrue benefits terminates with the contract, the right to arbitrate disputes regarding benefits which may have already accrued or vested survives. The rule neither contradicts policies established by the Employment Relations Commission, nor deprives employees of protections guarded by the commission. Nor does the rule prevent parties to a collective bargaining agreement from departing from the rule by explicitly agreeing to contrary terms.

4. In this case, the defendant's right to arbitrate her claim that the failure to reappoint her was not for just cause would have been arbitrable had the failure occurred prior to the contract's expiration. However, nothing in the collective bargaining agreement evinces the parties' intent to extend the right of arbitration beyond its expressed termination date. The right not to be discharged except for just cause is of equal strength at the moment the contract is signed and at the moment the contract terminates and is not the type of right which can be said to have accrued or vested during the life of the contract. The constraints placed upon the employers by the former agreement were no longer effective at the time the defendant filed her grievance. No relief was available under the new collective bargaining agreement because the grievance procedure and arbitration clause of the new agreement were not given retroactive effect.

Justice BRICKLEY, joined by Justice RILEY, concurring, stated that the issue of the arbitrability of a discharge based on conduct occurring before the expiration of the collective bargaining contract should not be resolved because it was not raised in the plaintiff's complaint and was not adequately developed by the evidence.

Reversed.

Justice LEVIN, joined by Justices CAVANAGH and BOYLE, dissenting, stated that the right to grievance arbitration is preserved by § 13 of 1969 PA 312.

Section 13 of 1969 PA 312 was designed to extend after impasse the prohibition of the public employment relations act

against unilateral action by a public employer or a union to assure that the critical services performed by police officers and fire fighters would not be affected by a labor dispute. Included in the prohibition is unilateral action with respect to grievance arbitration procedures and all other mandatory subjects of bargaining. Until an arbitrator renders a decision, the status quo is preserved. It is not consonant with this purpose to conclude that in this case because there was an interval between impasse and the invocation of 1969 PA 312 the wages, hours, and other conditions of employment existing at the time of impasse no longer governed and that the employer could unilaterally change the conditions. The existing conditions frozen by invocation of 1969 PA 312 during the pendency of proceedings are the provisions of the expired contract concerning the mandatory subjects of bargaining, including any provisions concerning grievance arbitration procedures.

Justice LEVIN, writing separately, stated that the right to grievance arbitration is preserved by the common law of labor arbitration as well as by § 13 of 1969 PA 312.

General principles of labor law preserve after impasse the right to grievance arbitration. *Nolde Bros, Inc v Bakery & Confectionery Workers Union,* 430 US 243 (1976), which, consistent with the generally operative rule for construing Michigan labor law modeled on a federal labor law, should be assimilated into Michigan jurisprudence, established a strong presumption in favor of an arbitration clause surviving contract expiration. For this presumption to be rebutted, the parties must have indicated a contrary intention, either expressly or by clear implication. No such intention was expressed or implied in the collective bargaining agreement in this case. The right to arbitrate after contract expiration does not depend on the nature of the underlying obligation. All that is required is that the underlying obligation be arguably created by the expired agreement. Whether the underlying dispute concerns discharge or a right that has sometimes been described as vested is not determinative. The merits of the claim are to be decided by the arbitrator.

OPINION BY WILLIAMS, C.J.

1. LABOR RELATIONS — ARBITRATION — COLLECTIVE BARGAINING —
   EXPIRED AGREEMENTS.

The right to grievance arbitration provided in a collective bargaining agreement survives the expiration of the agreement where the dispute concerns rights which could accrue or vest during the term of the contract.

2. LABOR RELATIONS — ARBITRATION — COLLECTIVE BARGAINING — EXPIRED AGREEMENTS — WRONGFUL DISCHARGE.

The right of an employee not to be discharged except for just cause does not survive expiration of a collective bargaining agreement because it is not a right which can accrue or vest during the term of the agreement.

3. LABOR RELATIONS — ARBITRATION — POLICE AND FIRE DEPARTMENTS — COLLECTIVE BARGAINING — EXPIRED AGREEMENTS — WRONGFUL DISCHARGE.

Compulsory arbitration of conditions of employment of police officers or fire fighters to be included in a new collective bargaining agreement may be invoked during labor negotiations where the parties bargain to impasse; the right does not extend to grievances requiring interpretation of existing or expired agreements, nor does its invocation revive rights which terminated upon the expiration of an agreement (1969 PA 312, MCL 423.231; MSA 17.455[31]).

4. LABOR RELATIONS — ARBITRATION — POLICE AND FIRE DEPARTMENTS — COLLECTIVE BARGAINING — EXPIRED AGREEMENTS — WRONGFUL DISCHARGE.

A request for arbitration of a claim of wrongful discharge by a police officer which was made and denied, after the expiration of a collective bargaining agreement and after the officer's employers and the officer's union had bargained to impasse during negotiations regarding a successor agreement was not preserved under statutory provisions preserving conditions of employment during compulsory interest arbitration because the right against wrongful discharge did not survive the expiration of the agreement (1969 PA 312, MCL 423.231; MSA 17.455[31]).

DISSENTING OPINION BY LEVIN, J.

5. LABOR RELATIONS — ARBITRATION — POLICE AND FIRE DEPARTMENTS — COLLECTIVE BARGAINING — EXPIRED AGREEMENTS.

*Public employers and unions representing police officers and fire fighters, during the pendency of contract negotiations following the expiration of a collective bargaining agreement, may not take unilateral action after bargaining to impasse with respect to mandatory subjects of bargaining, including grievance arbitration procedures, but should invoke statutory interest arbitration; once invoked, provisions of the expired contract concerning mandatory subjects of bargaining, including grievance arbitration procedures, are frozen during the pendency of the proceedings; until the arbitrator renders a decision, the status*

*quo is preserved (1969 PA 312, MCL 423.215, 423.243; MSA 17.455[15], 17.455[43]).*

SEPARATE OPINION BY LEVIN, J.

6. LABOR RELATIONS — ARBITRATION — COLLECTIVE BARGAINING —
   EXPIRED AGREEMENTS.

   *Whether an employee may proceed to grievance arbitration under the provisions of an expired contract during the pendency of interest arbitration by the employer and the union does not depend on whether the underlying obligation is vested or not as long as it is arguably created by the expired contract; the focus should be on the right to arbitration, not the merits of the underlying dispute.*

*Scholten, Fant & Marquis, P.C.* (by *Ronald A. Bultje*), for the plaintiffs.

*Law Offices of Howard & Guido* (by *Frank A. Guido* and *Sheldon Goldner*) for the defendants.

Amici Curiae:

*John A. Lyons* for Fraternal Order of Police, Michigan State Lodge, State Labor Council.

*Hiller, Larky & Hoekenga* (by *Daniel J. Hoekenga* and *Marc M. Susselman*) for Michigan Education Association/NEA.

WILLIAMS, C.J.

## INTRODUCTION

The narrow issue in this case is whether the right to grievance arbitration of an unjust discharge claim survives the expiration of the collective bargaining agreement by which it is created.

The resolution of this question requires us to consider fundamental principles of contract and labor law. Foremost among these is that the right to arbitration is necessarily a creation of the par-

ties' intent as expressed in their collective bargaining agreement. A corollary is the right by the parties in their collective bargaining agreement to terminate the right to arbitration.

This question is one of first impression in the Michigan Supreme Court, and it has not been ruled on directly by the United States Supreme Court. The United States Supreme Court case which comes closest to answering the question presented here concerned a dispute over severance pay rather than an unjust discharge.[1] That case has spawned a number of lower federal court cases, with disparate results. Several jurisdictions have recognized that the parties' original contractual intent may be effectuated by ordering postcontract arbitration of disputes regarding the kinds of rights which can accrue or vest during the contract's term, but which may not ripen for enjoyment until after expiration.

We find this reasoning persuasive. Therefore, we hold that the right to grievance arbitration does survive the expiration of a collective bargaining agreement when the dispute concerns rights which can accrue or vest during the contract's term.

The right not to be discharged except for just cause in this case is not the kind of right which can accrue or vest during the contract's term. Therefore, Ms. Jaklinski's right to arbitrate her discharge did not survive the expiration of the collective bargaining agreement.

Ms. Jaklinski cannot rightly claim that her right survived the agreement's expiration because it was a mandatory subject of bargaining which the employer could not alter prior to impasse. First, her grievance arose and was denied after impasse was reached and after the employer's duty

---

[1] *Nolde Bros, Inc v Bakery & Confectionery Workers Union*, 430 US 243; 97 S Ct 1067; 51 L Ed 2d 300 (1977).

had terminated. Second, such an "unfair labor practice" claim is within the exclusive jurisdiction of MERC.

Ms. Jaklinski cannot rightly claim that her rights under 1969 PA 312 were frozen in place during the pendency of the interest arbitration invoked by her union, because they had expired long before Act 312 was invoked.

For these reasons, we reverse the decision of the Court of Appeals and reinstate the circuit court's order enjoining arbitration.

## I. FACTS

Diedre Jaklinski was appointed to the office of deputy sheriff in the Ottawa County Sheriff's Department in 1977. She was initially represented for purposes of collective bargaining by and was a member of the Ottawa County Deputy Sheriffs' Association. However, in October, 1979, the Police Officers Association of Michigan (POAM) became her bargaining agent.

The collective bargaining agreement between the county and the sheriff (referred to here as the joint employers) and the Deputy Sheriffs' Association at the time Jaklinski was appointed gave the joint employers the right to discharge or fail to reappoint employees, but only for just cause. The agreement defined a "grievance" as "a claim, reasonably and sensibly founded, of a violation of this agreement and/or violation of the rules and regulations of the Ottawa County Sheriff Department and/or Ottawa County." A grievant and the association were given the right to request binding arbitration of "grievances," but the arbitrator's decision was limited to the application or the

interpretation of the provisions of the collective bargaining agreement or the written rules and regulations of the employer.[2]

---

[2] The 1977-1979 agreement between Ottawa County, the Sheriff of Ottawa County, and the Ottawa County Deputy Sheriffs' Association included the following provisions:

"ARTICLE II
"*Rights of County*

"Except as specifically restricted by the terms of this Agreement, the customary and usual rights, powers, functions, and authority of Management are vested in the Employer. These rights include, but are not limited to, those provided by statute or law along with the right to hire, direct, promote, transfer, assign, and retain employees in positions within the Department. Further, to suspend, demote, discharge (including failure to reappoint), or take other disciplinary action but only for just cause, and to maintain the efficient administration of the Employer.

*     *     *

"ARTICLE XIX
"*Grievance Procedure*

"*Section 1.* A grievance is a claim, reasonably and sensibly founded, of a violation of this agreement and/or violation of the rules and regulations of the Ottawa County Sheriff Department and/or Ottawa County. Any grievance filed shall refer to the specific provision alleged to have been violated and shall adequately set forth the facts pertaining to the alleged violation. Any claims not conforming to the provisions of this definition shall be automatically denied as not constituting a valid grievance.

"*Section 2.* Any employee having a grievance in connection with the terms of this Agreement or the rules and regulations shall present it as follows:

*     *     *

"*Section 3. Arbitrator's Powers.* The arbitrator shall have no power to amend, add to, alter, ignore, change, or modify the provisions of this Agreement or the written rules or regulations of the Department or of the Employer, and the arbitrator's decision shall be limited to the application and/or the interpretation of the above and to the specific issue presented to him.

*     *     *

"ARTICLE XXIV
"*Duration*

"This Agreement shall remain in full force and effect until December 31, 1979, and shall become automatically renewable from year to year thereafter, unless either party wishes to terminate, modify, or change this Agreement, in which event, notification of such must be given to the other party in writing one hundred and eighty-two (182) days prior to the expiration date of this Agreement, or any anniversary date thereof."

The following chronology of events is set forth for the reader's convenience.

December 31, 1979 . . . The collective bargaining agreement expired; negotiations between the joint employers and POAM for a new collective bargaining agreement continued.

April 14, 1980 . . . . . . . The mediator declared that the parties' negotiations for a new collective bargaining agreement were at an impasse.

April 29, 1980 . . . . . . . The POAM petitioned the Michigan Employment Relations Commission for interest arbitration under 1969 PA 312.

June 9, 1980 . . . . . . . . The POAM filed an amended petition before the MERC.

December, 1980 . . . . . Jaklinski received notice that she would not be reappointed as deputy sheriff at the end of her term on December 31, 1980.

December 9, 1980 . . . . Jaklinski and POAM filed a grievance with the joint employers contesting the failure to reappoint her.

January 1, 1981 . . . . . Jaklinski's termination became effective.

February 27, 1981 . . . The joint employers filed suit in Ottawa Circuit Court, seeking a stay of Jaklinski's grievance arbitration.

March, 1981 . . . . . . . . . The Act 312 interest arbitration hearing was held.

March 31, 1981 . . . . . . MERC appointed an arbitrator to arbitrate Jaklinski's grievance at the request of the POAM and Jaklinski.

August 28, 1981 . . . . . The Act 312 interest arbitration award was issued and the new collective bargaining agreement became effective.

March 5, 1982 . . . . . . .   Muskegon Circuit Judge Piercey
                              enjoined the arbitration of Jak-
                              linski's grievance.[3]

The December 9, 1980, request for grievance arbitration alleged that the failure to reappoint Ms. Jaklinski was not for "just cause," in violation of the former collective bargaining agreement. The joint employers denied the request, claiming that Jaklinski's right not to be refused reappointment except for just cause and her right to arbitrate her grievance did not survive the expiration of the collective bargaining agreement. The Ottawa Circuit Court agreed with the joint employers that the constraints placed upon the sheriff by contract were no longer effective at the time Jaklinski filed her grievance. No relief was available under the new collective bargaining agreement because the grievance procedure and arbitration clause of the new agreement were *not* given effect retroactively to January 1, 1980.

In an unpublished opinion, the Court of Appeals reversed the judgment of the circuit court and ordered the parties to arbitrate the grievance. We granted the joint employers' application for leave to appeal, instructing the parties to include among the issues to be briefed:

> (1) whether Michigan should adopt from federal labor law a rule that an employer's obligation to arbitrate grievances in a collective bargaining agreement lapses with the termination of the agreement and (2) if so, whether such arbitration is revived by a petition for interest arbitration under 1969 PA 312, MCL 423.233; MSA 17.455(33). [419 Mich 934 (1984).]

---

[3] The judges of the Ottawa Circuit Court had disqualified themselves.

## II. UNAVAILING CLAIMED SOURCES OF THE RIGHT TO ARBITRATION

Jaklinski's argument that she is entitled to arbitrate her failure to be reappointed is three-pronged. First, she argues that her right to arbitration is a mandatory subject of bargaining which the joint employers had a duty not to unilaterally alter prior to an impasse in negotiations for a new collective bargaining agreement, and which therefore survived termination of the contract. Second, she contends that her right to arbitration was a "condition of employment" frozen in place during the pendency of "Act 312" interest arbitration. Third, she urges us to adopt lower federal court decisions holding that a "presumption of arbitrability" arises whenever a collective bargaining agreement fails to state expressly that the duty to arbitrate terminates automatically with the agreement.

A. *Arbitration as a Mandatory Subject of Bargaining*

The first prong of Jaklinski's argument is that because grievance and arbitration procedures were "mandatory subjects of bargaining" over which the parties were obligated to bargain in good faith the joint employers could not unilaterally change the right to grievance arbitration. It is argued that the right thus survived the hiatus between the expiration of the old agreement and the invocation of Act 312 arbitration. This was also the theory accepted by the Court of Appeals when it ruled that Jaklinski was entitled to arbitrate her failure to be reappointed.

It is true that public employers are required to bargain in good faith to impasse regarding "wages,

hours, and other terms and conditions of employment." MCL 423.215; MSA 17.455(15). Because "wages, hours, and other terms and conditions of employment" are regarded as mandatory subjects of bargaining, once a party negotiating a collective bargaining · agreement proposes such a subject, neither party may take unilateral action regarding it prior to impasse. *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 54-55; 214 NW2d 803 (1974). Grievance and arbitration procedures are mandatory subjects of bargaining. *Pontiac Police Officers Ass'n v Pontiac,* 397 Mich 674, 681; 246 NW2d 831 (1976).

Under this line of reasoning, it logically follows that as part of its duty to bargain in good faith the joint employers had a duty prior to reaching impasse not to unilaterally alter the grievance arbitration mechanism in place at the time the contract expired. However, Jaklinski's grievance arose and was denied long after the parties had negotiated to impasse, at a time when the joint employers no longer had a duty not to alter the grievance arbitration mechanism.

In addition, these duties are created in the public employment relations act, and are only enforceable under the mechanism set forth in the PERA by the Legislature. Breach of these duties is an unfair labor practice, and requests for an order to "cease and desist" from such practices are within the *exclusive* jurisdiction of the Michigan Employment Relations Commission. MCL 423.216; MSA 17.455(16). *Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104, 118; 252 NW2d 818 (1977). Jaklinski's claim in circuit court must be based on a viable *contractual* right to arbitration, and her claim based on statutory rights to "good faith bargaining" must be ad-

dressed to the MERC.[4] We thus reject the first prong of Jaklinski's argument.

## B. *Arbitration Under Act 312*

The second prong of Jaklinski's argument is that her right to arbitration was a "condition of employment" frozen in place during the pendency of Act 312 interest arbitration. It is helpful to distinguish at the outset between "grievance" and "interest" arbitration. The former involves arbitration of disputes arising under an existing collective bargaining agreement; the latter involves arbitration of the terms to be included in a new collective bargaining agreement after the parties have negotiated to impasse. Binding *interest* arbitration is the statutory right of fire fighters and police officers (including sheriff's deputies) and their public employers. 1969 PA 312, MCL 423.231; MSA 17.455(31).

After "Act 312" interest arbitration is invoked, neither party to the dispute may alter existing "wages, hours, [or] other conditions of employment" without the consent of the other during the pendency of proceedings before the arbitration panel. MCL 423.243; MSA 17.455(43). These statutes evince the Legislature's particular concern that public employees who provide vital services to their communities, and who are therefore deprived of the right to strike, have a forum available to

---

[4] See Leonard, *Post-contractual arbitrability after* Nolde Brothers: *A problem of conceptual clarity,* 28 NY L Sch L R 257, 291-294 (1983), describing the similar division of jurisdiction between the NLRB and the federal courts.

Federal courts have acceded to the special competence of the NLRB by refusing to order arbitration on the basis of an employee's claim that the employer's refusal to arbitrate is a "unilateral change." See *Procter & Gamble Independent Union v Procter & Gamble Mfg Co,* 312 F2d 181, 190 (CA 2, 1962), *cert den* 374 US 830 (1963); *Milwaukee Typographical Union v Madison Newspapers, Inc,* 444 F Supp 1223, 1227 (WD Wis, 1978), *aff'd* 622 F2d 590 (CA 7, 1980).

resolve labor disputes which is more expeditious and less expensive than the courts.

This statutory scheme does not, however, support Jaklinski's claim that she is entitled to arbitrate her failure to be reappointed. First, the compulsory arbitration provided for in Act 312 is not available to individuals with grievances regarding the interpretation of an existing or expired collective bargaining agreement. *Local 1518, AFSCME v St Clair Co Sheriff,* 407 Mich 1, 12; 281 NW2d 313 (1979). Second, the "wages, hours, [or] other conditions of employment" which are frozen in place during the pendency of Act 312 arbitration are those which exist at the time such arbitration is invoked. Therefore, Jaklinski's right to arbitrate her failure to be reappointed could not be preserved under Act 312 unless it survived the expiration of the old collective bargaining agreement on December 31, 1979, and then remained viable during the hiatus between that date and the invocation of Act 312 arbitration in April, 1980. Lastly, nothing in these statutes indicates that invocation of Act 312 proceedings should "revive" rights which terminated at the expiration of an old collective bargaining agreement. Thus, we conclude that the second prong of Jaklinski's argument is without merit unless it can be shown that her rights survived the hiatus between January 1 and April 29, 1980, a proposition we next examine.

### III. FEDERAL LAW: *NOLDE BROTHERS* AND ITS PROGENY

The third prong of Jaklinski's argument is that we should adopt from the common law of federal labor relations a rule that a "presumption of arbitrability" arises whenever a collective bargaining agreement fails to state expressly that the

duty to arbitrate terminates automatically with the agreement. It is true that some lower federal courts have adopted the presumption advocated by Jaklinski, but it is equally true that others have rejected it. Therefore an extensive discussion of the federal cases is necessary.

The United States Supreme Court has held that the right to arbitrate a *severance pay grievance* survives the expiration of a collective bargaining agreement. *Nolde Bros, Inc v Bakery & Confectionery Workers Union,* 430 US 243; 97 S Ct 1067; 51 L Ed 2d 300 (1977). In *Nolde,* the collective bargaining agreement terminated; thereafter, during negotiations for a new collective bargaining agreement, the employer closed its plant. The expired agreement contained a clause entitling employees to binding arbitration of "any grievance," and a clause entitling them to severance pay on the termination of their employment. The employees sought arbitration of their claims to severance pay. A majority of the Court rejected the employer's argument that its duty to arbitrate necessarily expired with the collective bargaining agreement and ordered the parties to arbitrate.

We note at the outset the incongruence between the narrow holding in *Nolde* and the language which accompanied it. The Court held that under the parties' collective bargaining agreement severance pay disputes were arbitrable following the expiration of the agreement. However, language in the opinion suggests two principal propositions. The first is that the right to grievance arbitration survives the expiration of any collective bargaining agreement whenever the dispute is over an obligation "arguably created" by the expired agreement. *Id.,* p 252. The second proposition is that a "presumption of arbitrability" arises whenever the parties fail to state expressly that their

duty to arbitrate terminated automatically with the contract. *Id.,* p 254. We see no reason to recognize such dicta.

The Court also developed weak rationales for its two propositions. The Court reasoned that the parties could have anticipated that they would be bound to arbitrate postcontract, because they drafted an unusually broad arbitration clause against the backdrop of a national labor policy favoring arbitration as a dispute settlement process. In addition, the Court presumed that because the parties expressed their preference for arbitration during the contract's term, they would not change their opinion about the advantages of arbitration after their contract expired. The Court did not attempt to discern the actual intent of the parties.

The disparity between the actual holding on the facts in *Nolde* and its language has undoubtedly been a source of confusion to the lower federal courts. Subsequent decisions demonstrate a split in opinion as to how broadly or narrowly *Nolde* should be read. There appear to be four discrete approaches to this problem, although a given court may rely on or mention more than one such approach.

The first approach is that taken by the United States Court of Appeals for the Third Circuit, which accepts a broad interpretation of *Nolde.* That court follows the first proposition of *Nolde* and holds that where the expired collective bargaining agreement contains a broad arbitration clause, and where the dispute "arises under" the expired agreement, the duty to arbitrate survives the expiration of the agreement. *Federated Metals Corp v United Steelworkers,* 648 F2d 856 (CA 3, 1981), *cert den* 454 US 1031 (1981) (employer ordered to arbitrate pension benefits dispute de-

spite fact that the pension claimants were ineligible at the time the agreement expired); *United Steelworkers v Fort Pitt Steel Casting Div,* 635 F2d 1071 (CA 3, 1980), *cert den* 451 US 985 (1981) (presumption of arbitrability not overcome by clause in contract that defined "employees" as workers for whom the union acted as representative "during the life of this Agreement," and employer ordered to arbitrate severance pay dispute).

A second approach has been to rebut the presumption raised in the second proposition by focusing on the breadth of the arbitration clause and other expressions of the parties' actual intent. Arbitration of a "no just cause" termination was denied where the collective bargaining agreement defined "grievance" as a dispute arising "during the term of the Agreement." *General Warehousemen & Employees Union v J C Penney Co,* 484 F Supp 130, 132 (WD Pa, 1980). Similarly, arbitration was denied where 1) the arbitrators served only for the "duration of this agreement," 2) express provision was made in the contract for post-expiration continuation of employees' health and insurance benefits, indicating the parties knew how to provide for survival of benefits when they so desired, and 3) in negotiating the new collective bargaining agreement, the union sought a clause allowing arbitration of disputes on the basis of events occurring prior to the effective date of the new contract, indicating the union's acknowledgment that arbitration would not be available otherwise. *Garland Coal & Mining Co v United Mine Workers of America,* 596 F Supp 747 (WD Ark, 1984).

A third approach has been to side-step the language of both propositions by examining whether a contractual no-strike clause also survives the expiration of the collective bargaining agreement.

A no-strike clause has been described by the United States Supreme Court as the quid pro quo for an employer's agreement to submit grievances to binding arbitration. *Boys Markets, Inc v Retail Clerks Union,* 398 US 235, 248; 90 S Ct 1583; 26 L Ed 2d 199 (1970) (enjoined strike in violation of no-strike clause where grievance was subject to arbitration). Thus, the United States Court of Appeals for the Third Circuit held that a union's engaging in a strike not forbidden by a no-strike clause did not alter the employer's duty to arbitrate grievances arising after the labor contract expired. *United Steelworkers v Fort Pitt Steel, supra,* pp 1076-1078. See also *General Warehousemen, supra,* pp 136-137.

*Nolde* cannot reasonably be read as relying on the quid pro quo concept because the Court made no mention of any "no-strike" clause and because there was no open plant capable of being struck. The dispute sought to be arbitrated involved severance pay allegedly due as a result of the plant closing. The duty to arbitrate was imposed upon the employer because of its presumed intent, not as the quid pro quo for any agreement on the part of the union not to strike an already closed plant. See *Textile Workers of America v Columbia Mills, Inc,* 471 F Supp 527, 531 (ND NY, 1978) (ordering arbitration of grievance in spite of the fact that collective bargaining agreement had terminated and employer's operations had ceased).[5]

The fourth and most persuasive approach has been to recognize that *Nolde* is factually limited to grievances regarding contract rights which can vest or accrue while a collective bargaining agreement is in effect, but which may not ripen until

---

[5] Jaklinski uses this quid pro quo concept to argue that she is entitled to arbitrate the failure to reappoint her. We dispose of this claim *post,* pp 25-28.

after its expiration.[6] In *Oil, Chemical & Atomic Worker's Int'l Union, Local No 4-23 v American Petrofina Co of Texas,* 586 F Supp 643 (ED Tex, 1984), *rev'd* 759 F2d 512 (CA 5, 1985),[7] an employee was discharged following the expiration of a collective bargaining agreement which contained both a "no termination except for just cause" clause and an arbitration clause. The court noted that in *Nolde,* the grievance concerned severance pay, a benefit already in place prior to the contract's termination. The court interpreted cases subsequent to *Nolde* as requiring arbitration where 1) the dispute centered on events which took place totally or in part prior to contract termination, or 2) the dispute involved accrued rights, such as pension or disability benefits. *Id.,* p 647. Because the dispute before it did not fit within either category, the court denied arbitration. The court expressly rejected the broad reading given *Nolde* in *Fort Pitt, supra:*

> [I]t is apparent that [*Fort Pitt's*] standard is simply an overbroad misinterpretation. Other decisions have limited *Nolde* to apply only to accrued rights and benefits; and this Court believes this is the proper view. Otherwise, almost every clause and term of a collective bargaining agreement would stay in effect after the agreement was terminated. This certainly would not reflect the in-

[6] The United States Court of Appeals for the Fourth Circuit made this distinction in its well-reasoned opinion in *Bakery & Confectionery Workers Union v Nolde Bros, Inc,* 530 F2d 548, 553 (CA 4, 1975) (ordering arbitration of disputes regarding rights, like severance pay, but unlike discharges or employer lockouts, which employees earn and whose vesting is contingent upon a particular event).

[7] The United States Court of Appeals held that the question whether the discharge was arbitrable must itself be submitted to arbitration, because the court could not be sure that the arbitration clause of the collective bargaining agreement was not susceptible to an interpretation that would mandate arbitration of the discharge. While this renders the district court's decision of little precedential value, that court's discussion of *Nolde* remains illuminating.

tention of the parties; but it certainly would lead to a raft of litigation. [*Petrofina, supra,* pp 648-649.]

Disputes involving accrued but unused rights were also held arbitrable after the expiration of the collective bargaining agreement in *Erie Co Geriatric Center v Local No 2666, AFSCME,* 464 F Supp 561 (WD Pa, 1978), *aff'd* 622 F2d 578 (CA 3, 1980) and 716 F2d 890 (CA 3, 1983). There the arbitration clause in the collective bargaining agreement defined an arbitrable grievance as "a dispute concerning the interpretation, application, or alleged violation of a specific term or provision of this agreement." *Id.,* p 565. The court reasoned that the breadth of the arbitration clause evinced the parties' intent that the clause survive the termination of the collective bargaining agreement. Noting that *Nolde* made clear that the timing of the demand for arbitration was not dispositive, the court ordered arbitration of disputes over workers' accrued but unused seniority rights and benefits. *Id.,* p 565. See also *Int'l Brotherhood of Teamsters v Brinks, Inc,* 744 F2d 283, 286 (CA 2, 1984) (reading *Nolde* as requiring post-contract arbitration where the claims "arise *under* the collective bargaining agreement, but do not ripen until *after* it expires"); *United Mine Workers v Jericol Mining, Inc,* 492 F Supp 132, 136 (ED Ky, 1980) (eligibility for accruable vacation pay arbitrable following expiration of contract, regardless of whether the pay vested during life of agreement).

IV. ADOPTED RULE: POSTCONTRACT
ARBITRABILITY OF ACCRUED OR VESTED RIGHTS

For the reasons which follow, we adopt the

fourth approach outlined above and hold that the right to grievance arbitration survives the expiration of the collective bargaining agreement when the dispute concerns the kinds of rights which could accrue or vest during the term of the contract. We do so because such a rule recognizes and sustains both fundamental principles of law and the right of employees and employers to develop the common law of labor relations in their collective bargaining agreements.

The duty to arbitrate grievances arises from a contractual agreement between an employer and its employees. Absent such an agreement, neither party is obliged to submit to binding arbitration. *Grand Rapids v Fraternal Order of Police,* 415 Mich 628, 635, 644; 330 NW2d 52 (1982). Parties enter into arbitration agreements because they believe such dispute resolution is in their mutual self-interest. Parties usually also find it in their mutual self-interest to have their contractual obligations terminate at a specified time. They usually express this intent in an unambiguously phrased contract-duration clause.

Arbitration has become the favored procedure for resolving disputes in Michigan and federal labor relations because parties have expressed their preference for arbitration in their contracts. The federal labor policy favoring arbitration originated in the Labor Management Relations Act, which states that "[f]inal adjustment *by a method agreed upon by the parties* is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement." 29 USC 173(d) (emphasis added). This provision was interpreted by the United States Supreme Court

as creating a national policy favoring arbitration,[8] but notably the statute refers *not* to arbitration but to a method "agreed upon by the parties." Thus, "[i]t is by enforcing the agreement of the parties" to forego adjudication "that the law 'prefers' arbitration." *Grand Rapids, supra,* p 635.

The rule adopted here effectuates the parties' original intent as expressed in their collective bargaining agreement. Usually parties have agreed that certain rights, such as pension, disability, seniority and vacation benefits, can accrue or vest during the life of the contract. The realization of some of these rights may be contingent upon a well-defined future event. An employee should not be deprived of already accrued or vested rights on the fortuity that they become ripe for enjoyment following the expiration of the agreement. Such an employee remains entitled to such rights and to the dispute resolution process the parties agreed to use to enforce them. While the substantive right to continue to accrue benefits terminates with the contract, the right to arbitrate disputes regarding benefits which may have already accrued or vested survives.

In adopting this rule, we follow the holding in *Nolde,* as circumscribed by its facts. We find persuasive the reasoning of those federal courts which have recognized *Nolde's* factual limitation to contract rights which can accrue or vest during the contract's term. We also note that this construction of *Nolde* has received approval among labor law scholars.[9] We reject as unjustifiably expansive

[8] *United Steelworkers v American Mfg Co,* 363 US 564, 566-567; 80 S Ct 1343; 4 L Ed 2d 1403 (1960).

[9] See, *e.g.,* Krupman, "Arbitration after contract expiration," in *A Review of the NLRA Interpretations & Current Case Law,* 211, 223 (ABA Committee on Development of Law Under the NLRA, 1984); Feldwisch, *Nolde & arbitration of post-contract disputes,* 40 Ohio St L J 187, 207 (1979); Geslewitz, *Case development since* Nolde Brothers:

those decisions which require postcontract arbitration whenever a dispute concerns an obligation arguably created by the expired agreement.

We also note that the rule adopted here neither contradicts policies established by the MERC, nor deprives employees of protections vigorously guarded by the MERC.[10]

Nothing stated here should be interpreted to mean that the parties to a collective bargaining agreement cannot explicitly agree to terms which depart from any rule announced here. They may agree to their own definition of "accrued" or

---

*When must post-contract disputes be arbitrated?*, 35 Lab L J 225, 239 (1984); Kriksciun, *Post-contract arbitrability since* Nolde Brothers, 54 U Colo L R 103, 112 (1982); Leonard, n 4 *supra,* p 290.

California appears to have adopted a similar rule. See *Thornton v Victor Meat Co,* 260 Cal App 2d 452, 471; 67 Cal Rptr 887 (1968), holding that rights, including the right to arbitrate, which may have accrued under the collective bargaining agreement survive its termination; *Northern California Hod Carriers v Pennsylvania Pipeline, Inc,* 103 Cal App 3d 163; 162 Cal Rptr 851 (1980), cert den 449 US 874 (1980), holding that the right to arbitrate "vests" on the date the alleged grievance arises, and thus is enforceable even if not demanded until after the contract expires.

[10] MERC has not afforded relief to claimants pursuing unfair labor practices charges against their employers for refusing to arbitrate grievances arising after contract expiration. MERC has held that an employer's refusal to abide by a contractual grievance and arbitration procedure following the expiration of the collective bargaining agreement is *not* a "unilateral change" which violates the employer's duty to bargain, as long as the employer is willing to discuss individual grievances at the bargaining table. *Warren Consolidated Schools v Warren Ed Ass'n,* 1975 MERC Lab Op 129; *Jackson Community College v Faculty Ass'n,* 1978 MERC Lab Op 913; *Inland Lakes Schools v Northern Michigan Ed Ass'n,* 1984 MERC Lab Op 173; *City of Dearborn v Alcamo,* 1984 MERC Lab Op 78.

The Michigan Employment Relations Commission is the state agency specially empowered to protect employees' rights. While this Court is not bound by the decisions of that agency, we acknowledge the MERC's expertise and judgment in the area of labor relations.

Notably, the MERC's refusal to find a right to postcontract arbitration is a more restrictive policy than that endorsed by the National Labor Relations Board, which has held that an employer breaches its duty to bargain in good faith by refusing to arbitrate a postcontract discharge. *American Sink Top & Cabinet Co, Inc v Millmen-Cabinet Makers Local 550,* 242 NLRB 408 (1979); *Digmor Equipment & Engineering Co, Inc v Teamsters Local 166,* 261 NLRB 1175 (1982).

"vested" rights. They may explicitly agree to extend beyond contract expiration any substantive or procedural rights. They may explicitly agree that accrued and vested rights and the right to arbitrate concerning them also extinguish at contract termination.

We also wish to emphasize that in a suit to compel or enjoin arbitration, a court's inquiry is limited to the question of arbitrability. While the rule announced here necessarily requires courts to learn some of the circumstances surrounding the substantive dispute, courts must assiduously avoid deciding the merits of the underlying dispute in the guise of deciding arbitrability. We caution courts to heed the admonition of the United States Supreme Court:

> Since any attempt by a court to infer [a purpose to exclude the claim from arbitration] necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator. [*United Steelworkers v Warrior & Gulf Navigation Co,* 363 US 574, 585; 80 S Ct 1347; 4 L Ed 2d 1409 (1960).]

Thus, while a court would act well within its power by deciding that a dispute must be submitted to postcontract arbitration because it involved the kind of contract right which accrued or vested during the life of the contract, it would usually act outside its legitimate province by deciding whether a particular employee's rights had actually accrued or vested.

## V. APPLICATION TO FACTS

It is clear that Jaklinski's failure to be reap-

pointed would have been arbitrable had it occurred prior to the contract's expiration. However, nothing in the collective bargaining agreement evinces the parties' intent to extend the right to arbitration beyond the unambiguously expressed termination date of December 31, 1979.

In addition, her right to be reappointed except for just cause was not the kind of right which could accrue over time or which could vest upon a particular contingency. See *Marine Engineers Beneficial Ass'n v Puerto Rico Marine Management, Inc,* 537 F Supp 813, 816 (SD NY, 1982) (distinguishing between claims to benefits arguably accruing during the term of the contract, which were arbitrable postcontract, and a "discharge without cause" claim, which was arbitrable only if the discharge occurred during the term of the contract). Thus, under the rule announced here, the joint employers cannot be ordered to arbitrate this dispute.

Jaklinski has argued that she is entitled to postcontract arbitration because her discharge might have been based, in part, on conduct which took place while her "just cause" right was still viable.[11] Because the just cause right "vested," it is argued, when at least some of the offending conduct took place, the employee should be entitled to arbitrate the discharge.

We reject any attempt to analogize the right not to be discharged except for just cause and rights which can be said to have accrued or vested during the life of the contract for two reasons. First, the concept of "accrued or vested rights" cannot be stretched to include the right not to be discharged except for just cause. The right not to be dis-

---

[11] This argument is primarily based on language in the NLRB's decisions in *American Sink Top & Cabinet Co, Inc,* and *Digmor Equipment & Engineering Co, Inc, supra.*

charged except for just cause is of equal strength at the moment the contract is signed and at the moment the contract terminates. It does not entitle its holder to increased benefits over time, nor is its exercise contingent on other events. Second, it would be ridiculous to extend the right to arbitrate beyond contract termination for an employee who may have committed a wrong during the contract's term, when the right to arbitrate other kinds of clearly nonoffensive conduct terminates with the contract.

Moreover, we believe that ordering arbitration because a discharge might have been based on events which occurred prior to the contract's expiration would have several unfortunate consequences. First, the substantive "just cause" right which the parties agreed would terminate with the contract would be continued indefinitely.[12] Second, courts would necessarily have to inquire into the causes for a disputed discharge, and the risk that courts would decide the merits of a case in the guise of deciding arbitrability would be enhanced. Lastly, parties would be encouraged to litigate the question of arbitrability because most employees could allege that some conduct which occurred prior to contract termination contributed to the employer's decision to discharge.[13]

Jaklinski has also based a claim for postcontract arbitration on the quid pro quo concept, described *ante,* pp 18-19, as the third approach taken by the federal courts in interpreting *Nolde.* Jaklinski argues that because public employees are denied the right to strike, MCL 423.202; MSA 17.455(2), their public employers should similarly be denied the right to refuse postcontract arbitration.

[12] See Kriksciun, n 8 *supra,* p 107, n 12.

[13] For criticism of *American Sink Top* and *Digmor,* see Geslewitz, n 8 *supra,* pp 230-232.

This argument ignores important distinctions between the public and private sector. First, just as public employees are denied their most powerful economic weapon, the strike, so too are public employers denied their most powerful economic weapon, the shutdown or lockout. Second, in return for giving up the right to strike, at least some public employees, including Jaklinski, receive a benefit not enjoyed by private sector employees: the right to compulsory *interest* arbitration. MCL 423.231; MSA 17.455(31). Because of these distinctions, one cannot say that a public employer should be forced to submit to postcontract *grievance* arbitration as a quid pro quo for the public employees' inability to strike.

The courts of New York have reached a similar conclusion. *Poughkeepsie Bd of Ed v Poughkeepsie Public School Teachers Ass'n,* 349 NYS2d 47; 75 Misc 2d 931 (1973), *aff'd* 354 NYS2d 589; 44 AD2d 598 (1974). *Poughkeepsie* rejected a ruling by the New York Public Employment Relations Board that a public employer was obliged to maintain existing terms of employment during negotiations for a successor collective bargaining agreement. The board thought such an obligation a fitting quid pro quo for the no-strike obligation on the part of the public employees. The court ruled, however, that the Legislature had provided a detailed procedure for resolving deadlocks in collective bargaining and that thus a public employer need not comply with all terms of an expired collective bargaining agreement. See also *Village of Lynbrook v Lynbrook Police Benevolent Ass'n,* 385 NYS2d 484; 87 Misc 2d 57 (1976); *Betts v Hoosic Valley Teachers' Ass'n,* 382 NYS2d 647; 86 Misc 2d 964 (1976).

Our holding does not preclude the possibility that employers and employees may be required under a proper contract to arbitrate disputes aris-

ing out of postcontract discharges.[14] Rather, we leave control over the question of arbitrability with the parties, from whose agreement the right to arbitration arises. Unions and employers can agree that the terms of employment during a hiatus between contracts will include the right to binding arbitration of some or all grievances. Similarly, they can agree that arbitration rights in the new collective bargaining agreement will be given effect retroactively to the date of the expiration of the old agreement.

### CONCLUSION

Jaklinski's right to arbitrate her claim that the Sheriff's failure to reappoint her was not for just cause did not survive the expiration of the collective bargaining agreement. For all the reasons above, we reverse the decision of the Court of Appeals and reinstate the order of the circuit court enjoining arbitration.

RYAN, J., concurred with WILLIAMS, C.J.

BRICKLEY, J. (*concurring*). We concur with the opinion of Chief Justice WILLIAMS in all respects save one. The question of the arbitrability of a discharge based on conduct occurring before the expiration of the collective bargaining contract was not raised in Ms. Jaklinski's complaint and was not adequately developed in the evidence in this case. Consequently, since that issue is not now properly before this Court, we would leave resolution of it for another day.

---

[14] In addition, nothing here should be interpreted to preclude any claim that an employee had a right not to be discharged except for just cause under the doctrine announced in *Toussaint v Blue Cross & Blue Shield*, 408 Mich 579; 292 NW2d 880 (1980). Such a claim was raised below by Jaklinski, but its rejection by the Court of Appeals under the facts of this case was not appealed. Hence, we have not considered it.

RILEY, J., concurred with BRICKLEY, J.

LEVIN, J. (*dissenting*). The question presented is whether a provision for grievance arbitration in a collective bargaining agreement concerning a police officer bargaining unit may be invoked after the collective bargaining agreement has expired and the union and the public employer have bargained to impasse. We would hold that the right to grievance arbitration is preserved by Section 13 of Act 312.

Section 13 of Act 312 provides:

> During the pendency of proceedings before the arbitration panel, existing wages, hours and other conditions of employment shall not be changed by action of either party without the consent of the other but a party may so consent without prejudice to his rights or position under this act.

Section 13 was designed to extend after impasse the PERA's prohibition against unilateral action by either the public employer or the union. The Legislature deemed it necessary to preclude unilateral action after impasse to assure that the critical services performed by police officers and fire fighters would not be affected by a labor dispute. It is not consonant with the purpose of Act 312 to conclude, because there was some time interval between impasse and the invocation of Act 312, that the wages, hours, and other conditions of employment existing at the time of impasse no longer govern and that the public employer may, either during the hiatus or at any time thereafter, unilaterally change the wages, hours, and other conditions of employment existing at the time of impasse.

We would hold that the POAM and Diedre Jaklin-

ski had the right to arbitrate the grievance arising out of her discharge.

## I

Diedre Jaklinski began her employment as a deputy sheriff in the Ottawa County Sheriff's Department in September, 1977.[1] The collective bargaining agreement gave the county and the sheriff, the joint employers, the right to discharge or fail to rehire employees for just cause. The union representative was given the right to seek binding arbitration of "grievances," defined as "a claim, reasonably and sensibly founded, of a violation of this agreement and/or violation of the rules and regulations of the Ottawa County Sheriff Department and/or Ottawa County."

The collective bargaining agreement expired on December 31, 1979, and the joint employers and the POAM began negotiating a new contract. The mediator declared on April 14, 1980, that an impasse had been reached in negotiations. The impasse was not the result of differences regarding the grievance-arbitration procedure or the just-cause provision.

The POAM petitioned, on April 29, 1980, the Michigan Employment Relations Commission for interest arbitration under Act 312. An amended petition was filed June 9, 1980. The interest arbitration hearing was held in March, 1981, and an award was issued in August. The award concerned economic provisions. The grievance and arbitration procedures were not affected.

In December, 1980—after the contract had expired, impasse had been declared, and Act 312

---

[1] Initially, the collective bargaining agent was the Ottawa County Deputy Sheriff's Association. Beginning in October, 1979, the bargaining agent was the Police Officers Association of Michigan.

arbitration had been invoked—Jaklinski received notice that she would not be reappointed. This was based on substandard performance evaluations and alleged inability to perform adequately. Jaklinski and the POAM filed a grievance with the joint employers on December 9, 1980, claiming the failure to reappoint violated the just-cause discharge provision of the expired contract. The joint employers refused the request for grievance arbitration on the ground that the right to arbitrate a grievance terminated on the date the contract expired. Jaklinski's employment ended on January 1, 1981.

The joint employers commenced this action seeking a stay of arbitration. The MERC appointed an arbitrator to arbitrate the grievance. A year later, on March 5, 1982, the circuit judge enjoined the arbitration. The Court of Appeals reversed relying on § 13 and the decision of the United States Supreme Court in *Nolde Bros, Inc v Bakery & Confectionery Workers Union,* 430 US 243; 97 S Ct 1067; 51 L Ed 2d 300 (1977).

## II

Act 312, applicable to police officers and fire fighters, provides that either party may invoke its procedures to compel interest arbitration. The "procedures for the resolution of disputes" set forth in the act are designed to assure "the high morale" necessary for the performance of these critical police and fire department services.[2] Section 13, providing for the continuation during compulsory arbitration proceedings of existing wages, hours, and other conditions of employment, is part of that dispute resolution procedure.

---

[2] MCL 423.231; MSA 17.455(31).

Act 312 supplements the PERA.³ The words "wages, hours and other conditions of employment," appearing in § 13 of Act 312, track language in § 15 of the PERA providing that there is "a mutual obligation of the employer and the representative of the employees" to bargain in good faith "with respect to wages, hours, and other terms and conditions of employment." This Court has said:

> The subjects included within the phrase "wages, hours, and other terms and conditions of employment" are referred to as "mandatory subjects" of bargaining. Once a specific subject has been classified as a mandatory subject of bargaining, the parties are required to bargain concerning the subject, and neither party may take unilateral action on the subject absent an impasse in negotiations. [*Central Michigan University Faculty Ass'n v Central Michigan University,* 404 Mich 268, 277; 273 NW2d 21 (1978).]

This Court has on a number of occasions held that grievance and arbitration procedures are mandatory subjects of bargaining.⁴ The Court of Appeals correctly observed that the MERC opinions, referred to in the opinion of the Court, holding that "grievance and arbitration procedures are not mandatory subjects of bargaining . . . conflict with Michigan Supreme Court cases on the issue and must be considered erroneous." Because grievance arbitration is a mandatory subject of bargaining, the PERA prohibits unilateral action regarding grievance arbitration procedures before impasse.

At impasse, under the PERA, either party may take unilateral action consistent with its last

---

³ MCL 423.244; MSA 17.455(44); *Local 1277, AFSCME v Center Line,* 414 Mich 642, 652; 327 NW2d 822 (1982).

⁴ See *Pontiac Police Officers Ass'n v Pontiac,* 397 Mich 674, 681; 246 NW2d 831 (1976).

offer.[5] The employer can lower wages and change the provisions governing other mandatory subjects of bargaining.[6] In the private sector strikes and lockouts occur during this period.[7] Section 13 is designed to prevent, in labor disputes involving police officers and fire fighters, the turmoil that may result from unilateral action. To assure that these employees continue to work, unilateral action even after impasse is forbidden. This includes unilateral action concerning grievance arbitration procedures and all other mandatory subjects of bargaining.[8] Until the arbitrator renders a decision, the status quo is preserved.

The opinion of the Court reads § 13 to mean that after impasse there are no "existing wages, hours and other conditions" to preserve, because at impasse the joint employers no longer have a duty not to alter mandatory subjects of bargaining, including the grievance arbitration procedure. That reading, in my opinion, defeats the purpose of the provision.

Section 13 is designed to assure that police and fire department services are not negatively affected because of unilateral action during negotiations. The solution adopted by the Legislature is to extend the prohibition against unilateral action after impasse. According to the opinion of the

[5] *Detroit v DPOA,* 408 Mich 410, 449; 294 NW2d 68 (1980); *DPOA v Detroit,* 391 Mich 44, 55, 56; 214 NW2d 803 (1974).

[6] Arbitration might be an exception to this rule because of *Nolde.* Nevertheless, it is not clear how *Nolde* affects the mandatory subjects of bargaining analysis because the two approaches have been kept separate. See Leonard, *Post-contractual arbitrability after* Nolde Brothers: *A problem of conceptual clarity,* 28 NY L Sch L R 257, 269 (1983) (trying to unify the two approaches).

[7] *American Ship Bldg Co v NLRB,* 380 US 300; 85 S Ct 955; 13 L Ed 2d 855 (1965).

[8] See generally *Local 1277, AFSCME v Center Line,* 414 Mich 654, stating that Act 312 covers mandatory, but not permissive, subjects of bargaining.

Court, unless Act 312 is invoked before or at the very moment of impasse, the prohibition against unilateral action after impasse does not become operative.

Requiring the union to invoke binding arbitration before impasse unnecessarily burdens the interest arbitration system and impedes independent party to party negotiation. It serves no purpose because the PERA already precludes unilateral action before impasse.[9]

Requiring instantaneous invocation of Act 312 arbitration is an unduly rigid construction of § 13. There is no indication in Act 312 that time is of the essence—that if the union does not invoke Act 312 immediately upon impasse then instanter there no longer are any "existing wages, hours and other conditions."

It does not serve the purpose of Act 312 to conclude that because there is some time interval between impasse and invocation of Act 312 procedures that the public employer could either during the hiatus or—as here—at any time thereafter unilaterally change the existing wages, hours, and other conditions of employment.[10] So construing the act may result in exactly the kind of confrontation between the public employer and police officers and fire fighters that Act 312 was designed to forestall.[11]

---

[9] *CMU Faculty v CMU,* 404 Mich 268, 277; 273 NW2d 21 (1978).

[10] The time interval between and invocation of Act 312 procedures in the instant case was fifteen days. If there was an extended time interval, then, depending on the circumstances, a different result might be appropriate. In this connection, we note that the act states that "the employees or employer may initiate binding arbitration proceedings by *prompt* request therefor . . . ." MCL 423.233; MSA 17.455(33). (Emphasis supplied.)

[11] See *Dearborn Fire Fighters v Dearborn,* 394 Mich 229, 247; 231 NW2d 226 (1975), stating that Act 312 "represents a legislative attempt to prevent the dire consequences of strikes or work stoppages by . . . policemen and firemen."

The Legislature enacted § 13 as part of Act 312 to bar unilateral action after impasse. The public employer and police officers and fire fighters and their representatives are encouraged to reach agreement without resorting to economic weapons because of the danger that the victim in this case would be the public.[12] While they negotiate, the status quo is preserved. Either party may invoke Act 312 interest arbitration at any point. If they reach impasse, but both choose to wait before arbitrating, neither party would be prejudiced. If, after impasse, one party chooses to take unilateral action, the other party may still invoke Act 312 and there then would be proceedings pending before an arbitration panel.

Although the language could be improved upon, the "existing" conditions frozen by Act 312 "[d]uring the pendency of proceedings" are the provisions of the expired contract concerning the mandatory subjects of bargaining, including any provisions concerning grievance arbitration procedures.

The PERA already prevented unilateral action with respect to these contract provisions before impasse. Section 13 extended this protection after impasse. This construction of the act effectuates the stated purposes of assuring an "expeditious, effective and binding procedure" necessary in the legislative judgment to preserve the "high morale" of police and fire department employees, and the exhortation that the "provisions of this act . . . shall be liberally construed" by the courts.[13]

---

[12] *Dearborn Fire Fighters,* 394 Mich 279, stating that "[w]hen policemen engage in a strike, the community becomes immediately endangered by the withdrawal of their services."

[13] Even if Act 312 does not prevent the employer from making unilateral changes after impasse, the opinion of the Court appears to be flawed in holding that nothing remains. The Court says that at impasse the employer no longer has a duty not to act unilaterally with the result that there are no existing conditions to preserve. The second proposition does not necessarily follow from the first.

### III

The disposition of this appeal which we believe to be correct would make it unnecessary to consider the *Nolde* analysis.

We would affirm the judgment of the Court of Appeals.

CAVANAGH and BOYLE, JJ., concurred with LEVIN, J.

LEVIN, J. (*separate opinion*). I write separately to express my disagreement with the opinion of the Court, which in addition to holding that the right to grievance arbitration is not preserved by § 13 of Act 312 holds, as a matter of construction of the public employment relations act, that after impasse and expiration of a collective bargaining agreement a grievance arbitration provision can no longer be invoked.

General principles of labor law preserve after impasse, without regard to § 13, the right to grievance arbitration. *Nolde Bros, Inc v Bakery & Confectionery Workers Union,* 430 US 243; 97 S Ct 1067; 51 L Ed 2d 300 (1977)—which I would assim-

---

There clearly are existing conditions, although it may be uncertain what they are. The employer's discretion is not unbounded. Any unilateral changes made would have to be consistent with the final offer to the employee's representative. *DPOA v Detroit,* n 5 *supra,* 56. See also *Bi-Rite Foods, Inc v Teamsters, Chauffeurs, Helpers & Taxicab Drivers Union,* 147 NLRB 59 (1964); Gorman, Labor Law, pp 445-446. At impasse, the duty to bargain is "not terminated but only suspended." The "employer may not take action disparaging to the collective bargaining process . . . ." Morris, The Developing Labor Law (2d ed), p 636.

Given that the employer must make an offer consistent with his previous negotiating position, an argument could be made that the earlier offers made by the County of Ottawa included an arbitration clause, and therefore an arbitration clause would have to be a part of any unilateral change. Although the grievance procedure was not discussed in negotiations, this was probably because both parties expected the existing procedure to be included in the new agreement. The arbitration provision was in fact included in the new agreement.

ilate as part of our jurisprudence—established a strong presumption in favor of an arbitration clause surviving contract expiration. For this presumption to be rebutted, the parties must have indicated a contrary intention, either expressly or by clear implication. No such intention was expressed or implied in this collective bargaining agreement.

The right to arbitrate after contract expiration does not depend on the nature of the underlying obligation. Whether the underlying dispute concerns discharge or a right that has sometimes been described as vested is not determinative.

The United States Supreme Court has cautioned that courts should not "become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator."[1]

## I

The opinion of the Court finds the *Nolde* analysis to be inapplicable.

### A

*Nolde* sets forth the common law of federal labor relations on the question whether an arbitration clause survives contract expiration. *Nolde* involved a dispute concerning contract provisions providing for binding arbitration of all grievances and for severance pay on termination of employment of all employees having three or more years of active service. The contract provided that it would remain in effect until July 21, 1973, and continue in effect thereafter until there was a new

---

[1] *United Steelworkers v Warrior & Gulf Navigation Co,* 363 US 574, 585; 80 S Ct 1347; 4 L Ed 2d 1409 (1960).

agreement or either party gave a week's notice of termination. The union gave notice of termination on August 20, 1973. The contract accordingly terminated on August 27. Negotiations continued, but on August 31, after the union threatened to strike, the employer chose to close the plant permanently. Wages and vacation pay were distributed. The employer, however, refused the union's demand for severance pay, and declined arbitration, claiming that the contractual obligation to arbitrate expired when the agreement terminated. The United States District Court accepted the employer's argument. The United States Court of Appeals reversed, holding that the duty to arbitrate can survive the expiration of the contract when it "affects . . . rights, like severance pay, that employees earn and that may or may not 'vest' for future enjoyment—contingent upon a particular event."[2]

Reviewing the lower court decisions, the United States Supreme Court "established a strong presumption favoring arbitrability."[3] The right to arbitrate, said the Court, did not necessarily expire with the contract. The arbitration clause survives contract termination unless the parties expressly, or by clear implication, indicate a contrary intent. If the operative effect of the arbitration clause survives, the Court will not concern itself with the character of the underlying right being arbitrated. If the underlying right "would have been subject to resolution under [the arbitration] procedures had it arisen during the contract term," it could be arbitrated afterwards.[4]

The Court summarily disposed of the district

---

[2] *Bakery & Confectionery Workers Union v Nolde Bros, Inc,* 530 F2d 548, 553 (CA 4, 1975).

[3] *Nolde Bros,* 430 US 254.

[4] *Id.* at 252.

court's conclusion that because the duty to arbitrate is "a creature of the collective bargaining agreement and [neither] . . . party [can] be compelled to arbitrate any matter in the absence of a contractual obligation," the duty necessarily expires when the agreement terminates.[5] The Court said:

> Carried to its logical conclusion that argument would preclude the entry of a post-contract arbitration order even when the dispute arose during the life of the contract but arbitration proceedings had not begun before termination. The same would be true if arbitration processes began but were not completed, during the contract's term. Yet it could not seriously be contended in either instance that the expiration of the contract would terminate the parties' contractual obligation to resolve such a dispute in an arbitral, rather than a judicial form.[6]

The Court went beyond a mere rejection of the district court's conclusion that the arbitration clause automatically expired when the contract termination became effective. The Court said that "where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication."[7]

In explaining the need for a strong presumption in favor of maintaining arbitration after the contract expired, the Court attempted to define the actual and presumed intent of the parties.[8] The

---

[5] Id. at 250-251.

[6] Id. at 251.

[7] Id. at 255.

[8] Goetz, Arbitration after termination of a collective bargaining agreement, 63 Va L R 693, 705 (1977): "By their contract the parties clearly expressed their preference for an arbitral, rather than a judicial, interpretation of their obligations under the collective-bargaining agreement."

Court noted that "[w]hile the termination of the collective bargaining agreement works an obvious change in the relationship between employer and union, it would have little effect on many of the considerations behind their decision to resolve their contractual differences through arbitration."[9] The Court said these considerations were the parties' confidence in the arbitration process, their choice of a prompt and inexpensive tribunal, the arbitrator's special competence and experience in general in interpreting collective bargaining agreements, and the parties' original belief that the arbitrator was the best judge of what this particular contract meant, and, finally, the alternative to arbitration would be a lawsuit—"the very remedy the arbitration clause was designed to avoid."[10] The Court also said that the parties "drafted their broad[11] arbitration clause against a backdrop of well-established federal labor policy favoring arbitration as the means of resolving disputes over the meaning and effect of collective bargaining agreements." The Court believed the context in which the contract was written "affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship" including those brought after the contract had expired.[12]

## B

The Court gave no indication that the presumption in favor of arbitration applies to certain grievances, but not others. While the decision concerned severance pay, the language is comprehen-

---

[9] *Id.* at 254.

[10] *Id.*

[11] Broad in the sense that it covers a wide range of disputes.

[12] *Id.* at 254-255.

sive. Affirming the decision of the United States
Court of Appeals for the Fourth Circuit, the Court
did not adopt the Fourth Circuit's distinction be-
tween rights that can be said to have vested and
other rights arising under the contract.[13] In the
course of discussing the arguments of the parties,
the Court noted that "the Union maintained that
the severance wages . . . were in the nature of
'accrued' or 'vested' rights," but the Court did not
appear to consider this distinction in determining
arbitrability. "As the parties' arguments demon-
strate, both the Union's claim for severance pay
and Nolde's refusal to pay the same are based on
their differing perceptions of a provision of the
expired collective-bargaining agreement."[14] This
alone is sufficient because,

> in determining the arbitrability of the dispute, the
> merits of the underlying claim for severance pay
> are not before us. . . . [W]hatever the outcome, the
> resolution of that claim hinges on the interpreta-
> tion ultimately given the contract clause providing
> for severance pay. The dispute therefore, although
> arising after the expiration of the collective bar-

[13] *Federated Metals Corp v United Steelworkers,* 648 F2d 856, 861
(CA 3, 1981); *United Mine Workers of America v Jericol Mining, Inc,*
492 F Supp 132, 136 (ED Ky, 1980) ("The Supreme Court's *Nolde*
opinion was not based on notions of 'vesting.' ") Goetz, n 8 *supra* at
716 ("The Supreme Court's failure to comment on this distinction
suggests that the Court does not consider the nature of the dispute
important"); Note, *Post-contract arbitrability since* Nolde Brothers, 54
U Colo L R 103, 108 (1982). But see *Hudson School Board v King,* 98
Mich App 517, 520; 296 NW2d 296 (1980) (although finding a right to
arbitrate under an existing contract, the Court in dictum noted
"*Nolde* . . . is distinguishable . . . since . . . [it] concerned an accrued
and vested right to severance pay upon termination whereas the
dispute here did not 'arise under' the expired contract."); *Oil, Chemi-
cal & Atomic Worker's Int'l Union, Local No 4-23 v American
Petrofina Co of Texas,* 586 F Supp 643, 648 (ED Tex, 1984) (*Nolde*
"limited . . . only to accrued rights and benefits), *rev'd on other
grounds* 759 F2d 512 (CA 5, 1985); *Petrofina* is discussed in Part II(B).

[14] *Nolde,* 430 US 248-249.

gaining contract, clearly arises under that contract.[15]

The Court did not appear to be concerned with the character of the underlying right. Whether severance is the type of right that expires or vests seemed to be irrelevant.[16] The Court's focus was not on the right being arbitrated but on the right to arbitration. The merits of the underlying claim will be decided by the arbitrator, the person in the best position to interpret the meaning of the contract.[17] The underlying obligation need only be "arguably created by the expired agreement,"[18] that is to say, the parties are arguing over the meaning of a provision of the old contract.

## C

The opinion of the Court would limit the *Nolde* rationale to vested rights. The vested rights approach draws a distinction between "certain rights, such as pension, disability, seniority and vacation benefits [that] can accrue or vest during the life of the contract," and others such as the right not to be discharged except for just cause, which are said not to vest or accrue during the life of the contract. The difference between the two is held to be that the "right not to be discharged except for just cause is of equal strength at the

---

[15] *Id.* at 249.

[16] Goetz, n 8 *supra* at 704 ("Apparently the court need make no effort to determine whether the contractual right asserted has the legal effect of surviving termination of the contract").

[17] *Nolde Bros,* 430 US 253; *United Steelworkers v Warrior & Gulf Navigation Co,* n 1 *supra* at 582 (The labor arbitrator is chosen, because the parties "expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop . . .").

[18] *Nolde Bros,* 430 US 252.

moment the contract is signed and at the moment the contract terminates. It does not entitle its holder to increased benefits over time, nor is its exercise contingent on other events."

There are a number of flaws in this approach, some of which have already been considered. To reiterate, the Court in *Nolde* could have readily adopted the vested-rights approach by simply following the reasoning of the Fourth Circuit. The Court's language conflicts with such a narrow holding; when the Court mentioned vested rights it did so in the course of saying that the underlying obligation is not to be considered as long as the dispute arguably concerns the interpretation of the old contract. Also, the policy arguments the Court stressed in explaining the "strong presumption" in favor of arbitration even after termination apply equally well to rights that do not vest: the parties' confidence in the arbitration process, their choice of an inexpensive and expeditious forum, their desire to avoid the courts, and their negotiation of a contract designed to be interpreted by an arbitrator.

The vested-rights approach ignores the Court's warning not "to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator."[19] The opinion of the Court quotes this passage, but at the same time recognizes that parties may explicitly agree to their own definition of "accrued" or "vested" rights. Even without idiosyncratic definitions, the difference between rights that can vest and rights that cannot is difficult to determine. As one commentator noted, "rights under a collective bargain-

[19] *United Steelworkers v Warrior,* 363 US 585.

ing agreement are not readily classified as accruable or non-accruable. Nearly all benefits and job security become available only after the employee has worked some specified period."[20] Unlike courts that had adopted the vested-rights approach, the United States Supreme Court seemed to recognize and to avoid the difficulties inherent in interpreting collective bargaining agreements, the express and implied intricacies of which were meant to be decided by arbitrators.

This Court should heed the Court's admonition and reject the vested-rights approach.

## II

*Nolde* has been applied in two cases involving demands for arbitration based on alleged violations of just-cause discharge provisions. The NLRB, relying on the language and the comprehensive scope of the reasoning of *Nolde,* concluded that the "strong presumption" of arbitrability applies also to discharges. A United States District Court, however, read *Nolde* to have implicitly adopted the lower court's distinction between rights that can and cannot vest; it held that severance pay is a right that can vest and discharge only for just cause is not.

## A

In *American Sink Top & Cabinet Co, Inc v Millmen-Cabinet Makers Local 550,* 242 NLRB 408 (1979), an employee was discharged three months after the collective bargaining agreement had expired. The NLRB found the discharge arbitrable on the basis of *Nolde.* The board followed the same three-step analysis the United States Supreme Court employed. The board rejected the argument

[20] Goetz, n 8 *supra* at 720-721.

that the right to arbitration automatically expires when the contract terminates; instead, quoting *Nolde,* the board held that in the "absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract." As for the underlying obligations being arbitrable, the board again quoted *Nolde,* holding "the parties' obligations under their arbitration clause survive contract termination when the dispute [is] over an obligation arguably created by the expired agreement." An alleged violation of the contract's discharge provision that could have been arbitrated during the contract term could, thus, be arbitrated after expiration.[21]

The board read *Nolde* to mean

> that if a dispute would have been arbitrable if it occurred when the contract was in effect, it remained arbitrable even though it occurred after the contract expired, regardless of the nature of the dispute, so long as the grievance was "arguably" raised as a contractual dispute and the contract did not expressly state that the duty to arbitrate terminated with the contract's expiration.

In *Digmor Equipment & Engineering Co,* 261 NLRB 1175 (1982), the board relied on *Nolde* and *American Sink* to find another post-termination of contract discharge to be arbitrable.

### B

The joint employers rely on a decision of a United States District Court, *Oil, Chemical & Atomic Worker's Int'l Union, Local No 4-23 v American Petrofina Co of Texas,* 586 F Supp 643

---

[21] See Leonard, *Post-contractual arbitrability after* Nolde Brothers: *A problem of conceptual clarity,* 28 NY L Sch L R 257, 267 (1983).

(ED Tex, 1984). There post-contract arbitration of an alleged violation of a just-cause discharge provision was rejected. *Petrofina*, I believe, misreads *Nolde* by applying the vested-rights analysis to determine whether the right to arbitrate survives.

The district court's decision in *Petrofina* was reversed by the United States Court of Appeals for the Fifth Circuit on grounds that render the district court's conclusions dicta at best. Without discussing whether the duty to arbitrate survived beyond the expiration date of the old contract, the Fifth Circuit held that

> the issue of whether this dispute falls under the arbitration clause of the newly-instituted collective bargaining agreement between the parties must be submitted to an arbitrator pursuant to that agreement since we cannot say with positive assurance that the arbitration clause of that agreement is not susceptible to an interpretation that covers this dispute. [*Oil, Chemical & Atomic Worker's Int'l Union, Local No 4-23 v American Petrofina Co of Texas*, 759 F2d 512, 516 (CA 5, 1985).]

Moreover, the district court did not read *Nolde* as limiting arbitration only to those rights that can vest. It said that "arbitration will be ordered in situations *where the dispute centers around* [sic] *an event that took place either totally or in part during the term of the contract.*" 586 F Supp 647. (Emphasis supplied.) This would appear to include arbitration of discharges that take place after the contract expires when the discharge was based at least in part on activities that took place during the term of the contract. Similarly, see *Glover Bottled Gas Corp v Teamsters Local No 282*, 711 F2d 479 (CA 2, 1983), where the United States Court of Appeals for the Second Circuit concluded that a grievance arising out of post-contract firing

of employees for refusal to take a polygraph test related to a theft investigation was arbitrable when the theft and the refusal to take the test occurred during the term of the contract. See also Leonard, *Post-contractual arbitrability after* Nolde Brothers: *A problem of conceptual clarity,* 28 NY L Sch L R 257, 290 (1983), stating that "[o]f crucial significance in this analysis is the question of when the operative facts underlying the grievance occurred . . . ."

Jaklinski was discharged on the basis of alleged substandard performance evaluations and inability to perform her duties. She had been employed for three years, two of which were covered by the collective bargaining agreement. Although the record is not clear on this point, the period of time in which her performance was said to be substandard may have included some part of those two years. Thus, even if the district court's decision in *Petrofina* were a correct statement of the law of post-contract arbitration, the grievance should be held to be arbitrable because the resolution of the dispute would likely involve an appraisal of Jaklinski's job performance in the two years she worked under the contract and the parties had agreed that an arbitrator would make that appraisal. The *Petrofina* statement is not correct because the district court would require exactly what the United States Supreme Court in *Nolde* sought to avoid: an examination of the merits of the underlying obligation.

III

The judgment of the Court of Appeals should be affirmed. The right to grievance arbitration is preserved both by the common law of labor relations as articulated in *Nolde* and by § 13 of Act 312.